WILLIAM STRAWN *et al.*

*v.*

PHEBE G. STRAWN.

| 53 | 263 |
| e207 | [1]145 |
| e207 | [2]146 |
| e207 | [3]147 |

1.  SPECIAL DOWER *of a widow—construction of the statute.* The statute providing for an allowance to a widow of such beds, bedsteads, bedding and household and kitchen furniture as may be necessary for herself and family, and provisions for a year for herself and family, is not to be construed, in regard to the character and amount of such allowance, without reference to the circumstances of the parties, but in fixing such allowance, the appraisers should take into view the condition and mode of life in which the widow was left by the death of her husband, and regard as necessary that furniture which is the ordinary and appropriate furniture for such homesteads.

2.  The word "family," as used in this statute, does not include alone the widow and the minor children of the deceased, but includes such persons as constituted the family of the deceased at the time of his death, whether servants, or children who had attained their majority. In this is not to be included boarders, but only the persons constituting the private household of the deceased.

3.  The design of the statute was to furnish the necessary sustenance for such household for one year after the death of the husband, and to enable the widow to keep her domestic circle, as respects the remaining members, unbroken, during that time; and the allowance of bedding, furniture and provisions should be made upon this basis.

4.  So where the husband died, leaving an estate of the value of $500,000, and a large and comfortably furnished house, and a family, besides four of his children, who were all of age, consisting of his widow, a young woman raised by the family, a house-keeper, a cook, a man-servant, and a man who acted as superintendent of a large farm under the widow's control, an allowance to the widow of beds, bedsteads and bedding estimated at $400, household and kitchen furniture estimated at $1600, and provisions for a year estimated at $1590, was not regarded as unreasonable or extravagant.

APPEAL from the Circuit Court of Morgan county; the Hon. CHARLES. D. HODGES, Judge, presiding.

This was an appeal from the county court of Morgan county, to the circuit court, involving a question in regard to the character and amount of the special dower for the widow of Jacob

Strawn, deceased. Upon the hearing in the circuit court, the original appraisement bill was given in evidence on behalf of the widow, as follows:

The special dower reported and estimated by the appraisers, was as follows:

| | |
|---|---:|
| Necessary beds and bedding for the widow and family | $ 400.00 |
| Necessary household and kitchen furniture | 1600.00 |
| One spinning wheel | 5.00 |
| One loom and appendage | 25.00 |
| One pair of cards | 1.00 |
| One stove and the necessary pipe therefor | 25.00 |
| One milch cow and calf | 50.00 |
| One horse | 40.00 |
| One woman's saddle and bridle | 15.00 |
| Provisions for one year | 1500.00 |
| Four sheep and fleeces | 32.00 |
| Food for three months | 50.00 |
| Other property | 60.00 |

The household and kitchen furniture, as per appraisement bill, was as follows, to-wit:

### HOUSEHOLD AND KITCHEN FURNITURE.

#### EAST ATTIC (ROOM.)

| | |
|---|---:|
| Bedstead, wash-stand, looking-glass, two chairs | $40.00 |
| Bed mattress and bedding | 15.00 |
| Curtains, $5; carpets, $30 | 35.00 |

#### WEST ATTIC (ROOM.)

| | |
|---|---:|
| Carpet | $30.00 |
| Two bedsteads, wash-stand, two chairs and glass | 12.00 |
| Beds and bedding | 30.00 |
| Stove and pipe | 10.00 |

#### ATTIC HALL.

| | |
|---|---:|
| Floor and stair carpets | $40.00 |

#### EAST FRONT CHAMBER.

| | |
|---|---:|
| Secretary | $30.00 |
| Bedstead, bureau, table and chairs | 65.00 |
| Bed and bedding | 15.00 |
| Carpet, $20; stove, $10 | 30.00 |

Statement of the case.

### SECOND STORY HALL.

Floor and stair carpets. ...................................... $50.00

### WEST FRONT CHAMBER.

Wardrobe, $30; bedstead, bureau and chairs, $70... .........$100.00
Beds and bedding, $15; two marble top tables, $50............ 65.00
Three sets window curtains, $30; rocker, $5.................. 35.00
Looking-glass............................................... 12.00

### WEST BACK CHAMBER.

Two bedsteads, wash-stands, bureau, chairs and rocker........$120.00
Carpet and rug.............................................. 20.00
Stove, $10; three sets curtains, $30........... .............. 40.00
Beds and bedding.......................... .................... 30.00

### LOWER HALL.

Pier table and chairs...... ................................ $10.00

### SITTING ROOM.

Sofa, $25; secretary, $20.................................... $45.00
Two end tables, $25; chairs and rocker, $10................... 35.00
Looking-glass, $4; carpet and rug, $25....................... 29.00
Curtains, $15; clock, $10; stove, $2......................... 27.00

### PARLOR.

Two centre tables, $10; sofa, $40; chairs, $40................$ 90.00
Rocker, $10; mirrors, $100................................... 110.00
Curtains, $60; carpets, $120; whatnot, $5.................... 185.00
Two astral lamps, $5; stove, $10.......... ................. 15.00

### DINING ROOM.

Extension table............ ........ .... ................... $15.00
Twelve chairs, $12; hat rack, $5; carpets, $25 ............... 42.00
Stove ....................................................... 10.00

### MEN'S ROOM.

Two bedsteads, stand and chairs.............................$ 6.00
Beds and bedding, $30; carpets, $2......................  ..... 32.00

### DROVERS' ROOM.

Four bedsteads, wash-stand and chairs.......................$ 20.00
Beds and bedding, $60; curtains and carpets, $40; stoves, $5... 105.00

### KITCHEN AND WASH HOUSE.

Cooking stove, etc. $25; cupboard and dishes, $25............$ 50.00
Ironing table, washtubs and churn........................... 10.00

One-half doz. silver table spoons, $15; one doz. tea spoons, $8.. 23.00
Castor, knives and forks...... ............................... 7.00
Other articles, not enumerated.............................. 310.00

Plaintiff offered to prove the extent and value of Jacob Strawn's estate, real and personal. The admission of this was objected to as immaterial and irrelevant, which objection was overruled, and exception then and there taken.

Plaintiff then proved that Jacob Strawn died the owner of a farm containing about four thousand acres; of five other valuable farms; of Strawn's hall, in Jacksonville; of a large and valuable dwelling house on the homestead, and the furniture hereinbefore set forth, and that Phebe G. Strawn took possession of all the real estate, and managed the same, and accounted for rents.

Plaintiff also offered to prove that a daughter over eighteen years of age, and divers other persons, as servants and employees, lived with Phebe G. Strawn after the death of her husband, and constituted part of her family. The admission of this evidence was objected to, on the ground that, the word family, as used in the statute giving special dower, included only the widow and minor children of the deceased husband, which objection was overruled by the court, to the overruling of which objection the appellant then and there excepted.

Plaintiff then proved that Martha Strawn, a daughter of Jacob and Phebe Strawn, aged twenty years, lived with said widow; also, a girl fifteen years of age, who had been several years with the family, as one of the family, but not related; a female servant, employed as a cook; a hired man; and a man employed as a superintendent and clerk, all resided with said widow after the death of her husband, and at the time of his death.

That Jacob Strawn died intestate on the twenty-third day of August, 1865, leaving a widow (Phebe G. Strawn) three children (the appellants) by a former wife, all of whom were

married and had families; also, five children of said Jacob
and P. G. Strawn, to-wit: Jacob, who was married; Julius
E., aged twenty-six years, single; Gates, aged twenty-four
years, single; Daniel G., aged twenty-two years, single; and
Martha, aged twenty years, single; all of whom, except
Martha, made the said widow's house their home; but during
the year after their father's death, were traveling most of the
time in Europe. Martha, the youngest child, was, most of the
year following the death of her father, at school in Massa-
chusetts.

The plaintiff also offered in evidence a written statement,
filed by P. G. Strawn, in the Morgan county court.

This paper contains a statement that she has ascertained
that the estate is solvent, and that the personal estate, apart
from the household goods appraised, is more than sufficient to
pay all claims against Jacob Strawn's estate, and that she
elects to take the household goods mentioned in the appraise-
ment bill, and hereinbefore set forth, at their valuation, on
account of, and in part satisfaction of her special dower.

The appraisers' second report was also offered in evidence by
plaintiff.

In this report of re-estimate, the appraisers adhere to their
first report as to special dower, except Lurton, one of the
appraisers, who filed a written dissent.

In this second report, the appraisers set out that Jacob
Strawn's estate, real and personal, was estimated as worth
$500,000, and as the appraisers understood, the family of the
widow consisted of herself, one young woman raised by the
family, a house-keeper, a cook, a man-servant, and a man who
acted as superintendent and clerk. The appraisers, in their
report, say that as the basis in part of their estimate of the
widow's special dower, "that there must be, of necessity, a
large number of calls upon the widow, requiring outlays for
family supplies, and in the employment of hired hands." The
appraisers also refer to some twenty cases, as precedents, set in
the Morgan county court, where, in proportion to the value of

the estate, a much larger sum had been allowed widows, than had been allowed in this case.

The plaintiff, the appellee, here closed her case.

The appellants, William Strawn *et al.* then introduced the following testimony:

J. Kelsey, a witness, being duly sworn, testified that he kept a hotel in Jacksonville in the years 1865 and 1866, and knew the price of provisions in Jacksonville and its neighborhood in those years; that he had been a hotel keeper and boarding house keeper for the last forty years; that provisions for one person for one year, on the basis of the best style of living, in the years 1865 and 1866, in and near Jacksonville, would not have cost more than one dollar per day, and, in his judgment, would not have cost that much. Provisions for a family of three would not have cost more than $500, and provisions for a family of eight would not have cost more than $800 for one year.

Necessary beds, and bedding and bedsteads for one person, would not have cost more than $85. Necessary household and kitchen furniture for one person, would not have cost more than $136; kitchen furniture, including stove and pipe, and other furniture, would not have cost more than $100.

This was all the evidence in the case. The court thereupon adjudged that the said Phebe G. Strawn be allowed the sum of $3903 as her special dower; that said Phebe G. Strawn be allowed to retain, in part satisfaction of said special dower, the household goods and furniture, at their valuation by the appraisers, to-wit, $1994, and that she be allowed credit, in her account as administratrix, for the balance of said $3903; that said Phebe G. Strawn recover her costs, and that a copy of this judgment be certified to the said Morgan county court, to which judgment of the Morgan circuit court, the said William, James G. and I. Strawn then and there excepted, and prayed an appeal, which was allowed.

The following is the assignment of errors:

1. The court erred in allowing to Phebe G. Strawn, as the widow of Jacob Strawn, the sum of $3903 as her special dower.

2. The court erred in admitting testimony of the extent and value of the real and personal estate of Jacob Strawn, as affecting the question of the amount of the widow's special dower.

3. The court erred in admitting testimony that hired hands and servants, and persons other than relatives of Jacob and Phebe Strawn, and children of Jacob Strawn, not minors, were living with her and constituting part of her family.

4. The court erred in determining that the word "family," in the statute giving special dower, includes hired hands, servants, persons other than relatives of Jacob and P. G. Strawn, and children who had arrived at majority.

5. The court erred in determining that "provisions for a year," in the statute relating to special dower, includes such a supply of provisions as will enable the widow to employ servants, and entertain company, in a style proportioned to the wealth of her deceased husband.

6. The court erred in determining that the phrases "necessary beds and bedding," and "necessary household and kitchen furniture," include such a supply of furniture and bedding, etc. as will enable the widow to employ servants, furnish a house for children who have arrived at majority, and for needy dependants, in a style proportioned to the wealth of her deceased husband.

Mr. HENRY E. DUMMER, with whom was Mr. I. J. KETCHAM, for the appellants.

The statute giving special dower to widows in derogation of the rights of creditors and heirs, is manifestly based on considerations of humanity, as in the case of the law exempting property from sale on execution. If there were no poor widows, this law allowing special dower never would have been enacted. See Gross' Ed. of Statutes, p. 806, sections 52 to 62.

That the legislature intended no discrimination as between rich and poor, is manifest, in this, that as to the value of the horse to be allowed, the saddle and bridle, and the item of " other property," the precise value has been fixed.

From the necessity of the case, the widow of a husband who had left expensive furniture would have the advantage over the widow of one who had left cheap furniture; but beyond this necessary difference, all widows under the law are on an equality.

When a man dies, the family that he leaves may be large or small. To prevent suffering, more would be necessary in one case than in another. The law could ·not then define how many beds and bedsteads, nor how much household and kitchen furniture, nor what provisions would be required to carry out its policy, and so the law provides that there shall be allowed necessary beds, etc., necessary household and kitchen furniture, and provisions for a year for " themselves and families."

It is necessary, then, that a construction shall be put upon the word " families." Does it include the minor children of the deceased, only? or does it include others? and if so, what others? We claim that the word " family " includes only the minor children of the deceased husband. The law has so sharply drawn the line between those who are to be regarded as capable of making contracts, and capable of taking care of themselves, at twenty-one years in males, and eighteen years in females, and that has been so long acquiesced in and is so well understood, that it is to be presumed that the legislature adopted in this law that line of demarkation.

It might, with some force, be insisted that the policy of this law is based on considerations of humanity, the word family ought to include any minor children of the widow, not the children of the deceased husband. But there are stronger presumptions against such a construction. In the absence of express language, it is difficult to suppose that, even in the interests of humanity, the legislature intended to justify the

taking of the property of one man to support the children of another.

In this case, Jacob Strawn left no minor children, nor at the date of his death had Mrs. P. G. Strawn any minor children. She declined taking any specific articles, reserving the right to take their equivalent value, either in other articles of property or in money.

The only controversy is as to three items: 1. Necessary beds, bedsteads and bedding. 2. Necessary household and kitchen furniture. 3. Provisions for a year.

The appraisers, instead of determining how many beds, bedsteads, and what bedding and furniture, and provisions, were necessary for Mrs. Strawn alone, she having no other family in the legal sense, assumed that the word family included male and female servants, and other parties not related either to Jacob Strawn or the widow; that they had a right to make provision for expected visitors; and that, in the amount of the allowance, they might increase it, because the estate was rich. With these views, the appraisers said the widow ought to have, as her special dower, beds, bedsteads and bedding worth $400 ; household and kitchen furniture worth $1600, and provisions worth $1590.

A glance at the appraisement bill will show that the appraisers, on their theory of the law, intended to give Mrs. Strawn all the furniture in the well furnished homestead of a dozen rooms.

We claim that the appraisers and the court below erred in their construction of the law. On the widow's declining to select the specific articles of property allowed her under the designation of special dower, the appraisers should have determined how many beds and bedsteads, what bedding, furniture and provisions for a year, were necessary and proper for one person. If the specific articles named in the law were found in the property belonging to the estate, as was the case, they might have selected such as were the most valuable.

The appraisers should then have appraised the value of the specific articles so determined upon. In the item of provisions for a year, the estimate should have been for one person, and should have been the same as for any other widow, irrespective of the question whether the estate was large or small.

Mr. WILLIAM THOMAS, for the appellee, contended that under a proper construction of the statute, and in view of the circumstances of this case, the allowance made by the circuit court was not unreasonable or extravagant.

The legislature did not mean that this special dower to the widow, should be in all cases the same, without reference to the value of the estates, or the condition in life of the parties. In estimating the amount of provisions for the year, as well as the bedding and furniture necessary, the court should consider the value of the estate and the mode of living to which the family had been accustomed, and the social position of the family. What is " necessary," is not to be determined by the demands for a bare subsistence, but by the circumstances of the family, and their usual mode of living.

This is a case between the heirs and the widow, not between her and creditors.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This is an appeal from an order of the circuit court, determining the special dower of Phebe G. Strawn, widow of Jacob Strawn, the case having been carried to that court from the county court. Jacob Strawn died on the twenty-third of August, 1865, leaving an estate valued at $500,000, and eight children, of whom three were the offspring of a former wife, and five were the children of appellee. They were all of age, but four of the. five children made the widow's house their home, though traveling much of the time during the year succeeding their father's death. The homestead occupied by the widow is a large and valuable house, and her family consisted,

besides the children above referred to, of herself, a young woman raised by the family, a house-keeper, a cook, a man-servant, and a man who acted as superintendent of the large farm under the widow's control. Under these circumstances, the appraisers allowed to the widow beds, bedsteads and bedding estimated at $400; household and kitchen furniture estimated at $1600, and provisions for a year estimated at $1590. The circuit court approved this allowance, and the three step-children of the appellee appealed. The controversy relates only to the three items above named.

The statute gives to the widow such beds, bedsteads, bedding and household and kitchen furniture as may be necessary for herself and family, and provisions for a year for herself and family. The report of the appraisers states each specific article allowed under the head of household and kitchen furniture, and an examination of their report shows that their allowance was very far from being extravagant for furnishing a large and comfortable house, such as the homestead is shown to be. But the objection taken by counsel for appellants, and the ground upon which the appeal is prosecuted, is, that the word family, as used in the statute, means only the minor children of the deceased, and if there are no minor children, then the widow is entitled only to such bedding, furniture and provisions as are necessary for the use of one person, and that the word family can not include servants, or children who have attained their majority and still live with their mother, or persons who have been domesticated in the family during the lifetime of its head, or such visitors and guests as the social position of the widow will compel her to receive. It is insisted that no distinction should be made in the amount and character of the allowance between the widow of a man of large fortune, left with an ample and well furnished homestead upon her hands, and obliged either to abandon it, or to employ servants for its proper care, and a widow who is left in possession of a small

18—53RD ILL.

house, which she has been accustomed to care for by the labor of her own hands.

We do not deem this a reasonable construction of the statute. It can not be supposed that the legislature, when it used the words " necessary furniture " and " provisions for a year," designed to use the words in a rigid and unbending sense, to be construed in all cases without reference to the circumstances of the parties.   If that were so, we should be obliged to say that many articles of furniture to be found in all comfortable houses, were not . absolutely indispensable, and that the provisions for a year might be reduced to a certain amount of bacon and corn meal.   The reasonable intent to be imputed to the legislature is, that it designed the appraisers, in fixing this amount, should take into view the condition and mode of life in which the widow was left by the death of her husband, and to regard as necessary that furniture which is the ordinary and appropriate furniture of such homesteads.   So, too, in regard to the word family.   Inasmuch as the children of the appellee were all of age, although some of them were still members of the maternal family, it is claimed that the provisions allowed . should only be such as would be required for the sustenance of the widow alone.   But we are of opinion the legislature intended, by the word family, to include such persons as constituted the family of the deceased at the time of his death, whether servants, or children who had attained their majority. In this, of course, we do not include boarders, but only the persons constituting the private household of the deceased. It was the design of the legislature to furnish the necessary sustenance for such household for one year after the death of the husband, and to enable the widow to keep what death had spared of her domestic circle, unbroken, during that time, notwithstanding the loss of her husband.   This is the humane construction, and is most consistent with the kindly and liberal spirit which marks all our legislation in regard to widows. The judgment of the circuit court is affirmed.

*Judgment affirmed.*