ALBERT S. RACE *et al.*

*v.*

LOUISA OLDRIDGE.

1. EXEMPTION—*what is a family.* Under the law exempting certain property from levy and sale, a widow keeping a boarding house, having a lady friend residing with her as one of the family, and female servants, is the head of a family, within the meaning of the statute, and the friend and servants are a part of the family. Whether a person is the head of a family, is a question of fact for the jury.

2. ERROR *will not always reverse.* Although an instruction given is wrong, yet, if it works no injury to the unsuccessful party, and could not have misled the jury, the judgment will not be reversed.

3. PLEADING AND EVIDENCE—*recovery of penalty for levying upon property which is exempt.* Where a distress warrant was levied upon property which was exempt under the statute, it was held the injured party could not recover the penalty prescribed for such action, in an action of trespass against the landlord, where the declaration was in the common form, and not framed under the statute for a recovery of the penalty.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Mr. DAVID S. PRIDE, for the appellants.

Messrs. DENT & BLACK, for the appellee.

Mr. JUSTICE WALKER delivered the opinion. of the Court:

Appellants present three points for decision. The first, for giving an instruction for appellee; the second, in refusing an instruction asked by appellants, and the third, that the damages are excessive. It appears that appellee leased from one of appellants seven rooms in the building 47 La Salle street, Chicago, at $65 per month. The lease was made on the 1st of November, 1874, and on the 2d day of March following, appellants issued and had levied a landlord's warrant. It was levied on the household property of appellee.

It is claimed, by appellee, that she was the head of a family, and the property was exempt from distress. She was a widow, keeping a boarding house, and there lived with her without wages, and as one of the family, a lady and friend of appellee, and she had two female servants, besides boarders. It is not claimed she had paid any rent, and on a trial before a justice of the peace under the distress warrant, a jury found that there was $200 due appellants. Appellee, thereupon, appealed to the circuit court, and the property was returned to her. She, afterwards, brought trespass against appellants, and, on a trial in the circuit court, the jury rendered a verdict in favor of appellee for $350, upon which, after overruling a motion for a new trial, the court rendered judgment, and defendants appeal.

The instruction complained of, as given for appellee, informs the ·jury, that if she was the keeper of a boarding house, she was entitled to hold property exempt from distress, to the amount of $100, suitable to her business. And if she was the head of a family, she was entitled to hold the articles enumerated in the statute, exempt from levy under the distress warrant. And, if the property was so exempt, or any part of it, in making the levy she was deprived of the benefit of the exemption, and was entitled to recover.

It is claimed, that this instruction left the jury to determine the legal question whether appellee was the head of a family

and entitled to the exemption as such. That, as well as the question of whether she was the keeper of a boarding house, was one of fact. The instruction was almost in the language of the statute, and was unobjectionable. If appellants had desired, they might have asked and had given an instruction informing the jury what is required to constitute the head of a family, but they failed to do so, and have no right to complain of the instruction, as it asserts a strictly legal proposition applicable to the facts of the case.

But the question arises whether the jury did not find that she was the head of a family contrary to the evidence and the instruction. It is urged, that although she was at the head of and controlling the establishment, there was no family, and, consequently, she was not the head of a family; that the statute was intended to, and only embraces parents and children as constituting a family when living together; that a person at the head of a household consisting of such person and servants, is not the head of a family; that such persons can not constitute a family. According to the etymology of the word, it would be, clearly, a family. Lexicographers derive the word from the Latin word *familia*, which means "the whole of the slaves in a household." *Familus* means a slave. And the primary meaning, as given by Worcester, is, "persons collectively who live together in a house or under one head; household." The primary meaning, as given by Webster, is, "the collective body of persons who live in one house and under one head or manager; a household, including parents, children and servants, and, as the case may be, lodgers or boarders." Thus, it is seen that the word has a broad and comprehensive meaning in general use. Bouvier says, the word has a restricted sense, which only includes the father, mother and children; but in a more enlarged sense it includes all individuals who live under the authority of another, and includes servants of a family. Thus, it is seen, its legal meaning differs but little from its general acceptation.

That appellee was the head of this household is manifest.

And it would seem to be clear that it constituted a family, in the ordinary acceptation of the term. But was that the sense in which the term is used in the 52d chapter of the Revised Statutes? It is insisted, that it must be so held under the case of *Strawn* v. *Strawn*, 53 Ill. 263. There, it was held, in setting apart the widow's award, that the family consisted of the widow, several of her children who were of age, but resided with her, and her servants. But *Phelps* v. *Phelps*, 72 Ill. 545, is referred to as announcing a different rule. We do not so understand the case. In it there was no occasion to discuss the question of whether servants were a part of the family, and there were children for whom the award was claimed, they constituting the family. And in this latter case, *Strawn* v. *Strawn, supra,* was referred to approvingly and without any modification. In that class of cases and under that statute, servants do not compose a part of the widow's family.

But it may be said, that the policy governing in the adoption of the two statutes is different. They are both in favor of the family, and both operate against the creditor. They both are designed to enable the head of the family to keep its members together and to support them; and hence the articles of property enumerated, may be held in despite of creditors. And it seems to be conceded, that both statutes apply alike to the widow and minor children. And if both statutes must receive the same construction to that extent, why not to the full extent? No valid reason is perceived.

We apprehend that no one would dispute the widow's right, under either statute, to claim its benefits for a minor child adopted into the family as their own by the husband and wife. Such child would thereby become a part of the family, whether the most limited or more liberal meaning is given to the word. And no reason is perceived why a female friend of the family, going into it as one of its members by arrangement of all parties before the death of the husband, and so continuing with the widow after his death, should not be regarded as a member of her family. Nor why servants employed by her

to perform household duties should not be so regarded. A family consisting alone of the husband and wife, all will concede, is embraced within the provisions of the statute, and if so, why not a widow of such a husband after his death, where she is the head of a household consisting of herself and servants? If the statute was designed to enable a husband to support his wife, why not extend the same protection to her, that she may support herself? The widow's claim is as strong, and is, certainly, as much within the reason of the statute, when she is the head of a family, as is that of the husband.

We are, therefore, of opinion that the friend of appellee and her two female servants were each a part of the family, and that appellee was the head of the family, within the meaning of the statute, and she was entitled to its benefits.

The instruction of appellants, which the court refused to give, announced a rule directly the opposite of the views which we have here expressed, and it was properly refused.

The damages are not excessive. The evidence seems to be irreconcilably conflicting. And where it is so inharmonious, we never undertake to say what shall be received and acted upon, or which part rejected. That was for the jury to determine. If they believed, as they seem to have done, the evidence of appellee, it fully warranted them in awarding punitive damages.

It is objected, that the court erred in instructing that if any of the property was wrongfully taken and not returned, the jury might allow double the value thereof; that under the declaration in this case, such a recovery could not be had; that the declaration should set out a cause of action under the statute, and failing to do so, plaintiff could only recover for the damage actually sustained, unless the trespass was aggravated. This is the rule of practice announced in *Pace* v. *Vaughan*, 1 Gilm. 30. Although the declaration in this case was not framed under the statute for a recovery of the penalty, still, the instruction did no harm, as all the property was returned and so admitted by appellee, except one or

two trifling articles on which no value was fixed by the evidence. Although the instruction was wrong, it worked no injury to appellants, as it could not have misled the jury.

Perceiving no error in this record, the judgment of the court below must be affirmed.

*Judgment affirmed.*