[No. 7005.—In Bank.]
May 29, 1882.

## HELEN M. MOORE *v.* THOMAS W. MOORE, ADMINISTRATOR ETC.

FAMILY ALLOWANCE—ESTATES OF DECEASED PERSONS—PAYMENT.—Upon an application of the widow to the Probate Court for an order to compel the administrator to pay over to her the amount due for family allowance under an order previously made, the Court found that the whole amount of the allowance had been paid; but among the amounts found was a sum paid by the administrator in satisfaction of a bond executed by him in his private capacity to the widow—the condition of which had been broken—and a further sum expended in pursuance of an agreement with the widow for the maintenance and education of three of the children who were at school.

*Held*: With regard to the latter item, the payment having been made for the maintenance and education of the children at the request of the widow, was equivalent to a payment to her; but with regard to the former, the administrator has no authority to apply funds in his hands appropriated by law for the support of the family of the deceased to the payment or satisfaction of his personal obligations; nor could he legally enter into any agreement or make any arrangement with the widow for its application in that way.

ID.—The family allowance is as much for the advantage of the children of deceased as for the widow, and it can not be affected by any agreement or understanding between the widow and the administrator, which would have the effect to deprive the children of it, or to divert it to any other use than that specified in the law. (MYRICK, J., dissenting.)

APPEAL by petitioner, Helen M. Moore, from an order of the Probate Court of the County of Santa Cruz, denying a new trial. CRAIG, J.

*Charles B. Younger* and *Ferdinand J. McCann,* for Appellant.

*John C. Hall,* for Respondent.

McKEE, J.:

W. H. Moore died at the county of Santa Cruz, in this State, on October 30, 1871, leaving surviving him his widow, the appellant in this case, and five children. The respondent, having been appointed administrator of the estate, qualified March 4, 1872. According to the inventory and appraisement which he filed, the estate amounted in value to fifty-one thousand seven hundred and three dollars. On April 29, 1874, the widow petitioned the Probate Court for a family allowance. On the hearing of the petition, an order was entered to the effect "that the sum of two hundred and fifty dollars in gold coin of the United States of America be, and the same is hereby allowed out of the said estate of said deceased for each and every month since the death of the said deceased, and until the close of the administration of said estate, for the support and maintenance of the said family of the said deceased."

On the twenty-eighth of July, 1877, the widow, complaining that the administrator had refused to comply with the order of the Court, except in part, applied for an order to compel the administrator to pay over to her for the support of the family, the moneys appropriated for that purpose which remained unpaid.

On the trial of the issues made by the petition and answer, the Probate Court found that the family allowance to the date of filing of the petition amounted to seventeen thousand six hundred and fifty dollars; that the administrator had paid to the petitioner personally, under the order of the Court, one hundred and twenty-five dollars per month up to the month ending June, 1877, amounting in all to eight thousand seven hundred and ten dollars; that on May 9, 1877, he also

paid to her the sum of six thousand dollars; and had expended for the tuition, board, clothing, and necessary expenses of three of the children who were sent to school, three thousand and ninety-seven dollars and eighteen cents, making in all the total of seventeen thousand eight hundred and seven dollars, paid and expended. Upon this finding judgment was entered denying the application of the petitioner. She moved for a new trial, which was denied, and from that order this appeal is taken.

The expenditures for the maintenance and education of the children, and the payment of one hundred and twenty-five dollars per month personally to the widow, were the result of an understanding and arrangement between her and the administrator as to the education and maintenance of some of the children out of the family allowance. By her consent, one of the children of the deceased was sent to school during a portion of the time, after the death of the deceased. Of the others, two were sent to school about a year before the filing of the petition, remained there for about a year, but afterward did not return to reside with the petitioner, and the other two were under the personal care and control of the petitioner. Under the arrangement as to the payment of the family allowance, the widow received and accepted from the administrator the one hundred and twenty-five dollars per month as sufficient for the needs of herself and the two children under her personal supervision; and the balance of the allowance, with her approval and by her direction, was expended by the administrator for the maintenance and education of the three children who attended school.

As the widow, under those circumstances, undertook to educate and maintain the three children out of the family allowance, payment, by the administrator, for that purpose, at her request, out of the family allowance, was equivalent to a payment to her. In directing or authorizing the administrator to apply any portion of the money, as it became payable under the order, to the educational expenses of the children, she constituted him her agent for that purpose; and in accounting for moneys paid under the order, he was entitled to such expenditures as a credit. The Court below, therefore, correctly found that the administrator had complied with the

order of the Court to the amount of eleven thousand eight hundred and seven dollars.

But the finding that the administrator had paid, under the order, the additional sum of six thousand dollars, on the ninth of May, 1877, is not sustained by the evidence. There is no conflict in the evidence which establishes the fact that these six thousand dollars were paid by Thomas W. Moore on the ninth day of May, 1877, in satisfaction of a bond which had been executed by Alexander Moore, Thomas W. Moore, and John N. Bessie, about a month after the death of the intestate, and about five months before the appointment of Thomas W. Moore as administrator of the estate. That bond was given to guarantee the widow of the deceased in the payment of a policy of life insurance on the life of her husband, payable in the sum of five thousand dollars to her in the event of his death. The condition of the bond was as follows: " That said bond should be void if the insurance company should pay said policy of five thousand dollars to appellant, or if said appellant should receive from Thomas W. Moore, as executor of the last will and testament of said deceased, out of the funds of the estate of said ·deceased, or from the property of said estate, within fifteen months from the date of such bond, the sum of five thousand dollars, with interest thereon at one per cent per month, from January 1, 1872, to the date of such payment."

Satisfaction of the bond was made by the personal check of Thomas W. Moore for four thousand five hundred dollars, and his promissory note for one thousand five hundred dollars, payable to the widow one year after date. Upon receipt of the·check and note the bond was surrendered to Thomas W. Moore; and *that* is the transaction which the Court below finds constituted payment to the widow of six thousand dollars upon the family allowance, because she consented to receive it in that way.

But it is evident that the two things are separate and distinct in their natures. The one is a judgment appropriating a certain monthly sum from the estate of an intestate for the support of his family. The other is a personal guaranty for the payment of a policy of life insurance, by the company

that issued the policy, or by the estate of the deceased. The obligation arising from the order is official; that arising from the guaranty personal. In his official capacity the respondent, as trustee, was bound to obey the order of the Court. He had no authority to apply funds in his hands appropriated by law for the support of the family of the deceased, to the payment or satisfaction of his personal obligations.

Nor could he legally enter into any agreement or make any arrangement with the widow or any one else interested in the fund, for its application in that way. Such an arrangement would be subversive of the policy of the law, which appropriated the fund for the support of the family of the deceased, and void. Therefore, the consent of the widow, if such consent had been given, that the personal obligation of the administrator might be satisfied out of the family allowance, would not make valid what the law pronounces void. The allowance is as much for the advantage of the children of the deceased as for the widow, and it can not be affected by any agreement or understanding between the widow and the administrator which would have the effect to deprive the children of it, or to divert it to any other use than that specified in the law. (*Strawn* v. *Strawn*, 53 Ill. 263; *Phelps* v. *Phelps*, 72 id. 545.)

Order denying new trial reversed, and cause remanded for further proceedings.

MORRISON, C. J., and THORNTON and McKINSTRY, JJ., concurred.

MYRICK, J.: I dissent.