## Liberty National Bank of Chicago, Appellant, v. W. Zimmerman, Appellee.

### Gen. No. 44,217.

Opinion filed December 30, 1947. Released for publication January 28, 1948.

MAX E. BEEGUN, of Chicago, for appellant.

BERNARD S. NEISTEIN and EDWIN A. HALLIGAN, both of Chicago, for appellee; EDWIN A. HALLIGAN and MARTIN K. IRWIN, both of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

A forcible entry and detainer suit in which plaintiff, Trustee, alleged that it was entitled to the possession of four rooms, Apartment No. 3, 3701 West Arthington street, Chicago, and that defendant unlawfully withheld possession thereof from it. The case was tried by the court without a jury, defendant was found not guilty, and judgment was entered in his favor. Plaintiff appeals.

The facts in the case were not disputed. It was stipulated that plaintiff was the landlord of the premises commonly known as 3701-27 West Arthington street, Chicago, Illinois, and that defendant, W. Zimmerman, and his wife occupied Apartment Three on the third floor of the building located at 3703 West Arthington street, Chicago, Illinois, and that upon the expiration of the lease in question defendant continued to remain in possession of the apartment and paid rent therefor, which rent was accepted by plaintiff. The evidence shows that defendant permitted his daughter and son-in-law, Mr. and Mrs. Joseph Brenner, and their ten months old child to move into defendant's apartment and occupy the premises, and that they occupied said premises after defendant had been served with notices by plaintiff; that the Brenner

family gave up their own apartment in order to move into and occupy the premises with defendant, over the objection of plaintiff's duly authorized agent, and that plaintiff has refused to accept rent from defendant since the additional occupancy of defendant's apartment. Defendant testified that his daughter and son-in-law lived with him in said apartment in 1944 and that they now moved into said apartment because his wife moved to Colorado for her health and that defendant requested his daughter and son-in-law to move in with him and prepare his meals and keep the house for him. The trial judge stated in the report of proceedings that plaintiff claimed that the Brenners were a separate family unit even though related by blood to defendant. To quote from the report of proceedings: "10. The Court found that there was no issue of fact involved herein and *that the only question before the Court was one of law, namely, whether Mr. and Mrs. Joseph Brenner and their child constituted part of defendant's family.* The Court held that Mr. and Mrs. Brenner and their child had a right to move in with the defendant, W. Zimmerman, and the Court, therefore, held for the defendant." (Italics ours.) The lease between the parties was introduced in evidence.

Although it appears from the report of proceedings that the only question the trial court was called upon to determine was whether, under the law, Mr. and Mrs. Joseph Brenner and their child constituted part of defendant's family, plaintiff, in this court, takes the position that under the terms of the lease under which defendant was holding over "the question whether the Brenner family is a part of the Zimmerman family is immaterial." The lease in question was dated March 1, 1944. Robt. Shell—B. Rootberg was the lessor and defendant was the lessee. It provides, *inter alia,* that the lessor "hereby leases to Lessee for a private dwelling, the premises known and described as follows to-wit: Apartment No. — on the 3rd floor of

the building located at 3701 Arthington St. . . . for the term commencing on the 1st day of May, 1944, and expiring on the 30th day of April, 1945.'' Plaintiff now contends that ''in view of the provision of the lease that 'said premises shall not be occupied in whole or in part by any person other than lessee', the trial court committed error in holding, as a matter of law, that the defendant's son-in-law, married daughter, and grandchild could reside in the premises over the objection of the plaintiff as landlord.'' In support of this contention plaintiff relies upon provision 3 in the lease, which reads as follows:

''3. —Said premises shall not be occupied in whole or in part by any person other than Lessee, and Lessee shall not sublet the same or any part thereof, nor assign this lease, nor permit to take place by any act or default of himself or any person, any transfer by operation of Law of Lessee's interest created hereby; nor offer for lease or sublease the said premises, nor any portion thereof, without, in each case, the consent in writing of Lessor.''

■■ If plaintiff's present contention is sound it would be a violation of the terms of the lease for defendant to permit his wife to occupy the premises upon her return from Colorado, although it was stipulated upon the trial that defendant and his wife occupied the apartment after the execution of the lease. In other words, plaintiff takes the position that under the said provision of the lease no person other than defendant Zimmerman had the right to occupy any part of the four-room apartment. We note, however, that the lease also provides that the premises were leased to defendant *''for a private dwelling.''* Bouvier's Law Dictionary, Rawle's Third Revision, Vol. 1, p. 962, defines a ''dwelling-house'' as follows: ''A house usually occupied by the person there residing, *and his family.''* A lease ''shall be most strongly construed against the grantor if there be any doubt or uncer-

tainty as to the meaning of the grant." (*Goldberg v. Pearl,* 306 Ill. 436, 440.) The instant contention is an afterthought that does not appeal to our sense of justice. In any event, plaintiff tried the case upon the theory that there was only one question before the trial court, viz., "whether Mr. and Mrs. Joseph Brenner and their child constituted part of defendant's family" as a matter of law, and it will not be allowed to change its position in this court.

The next and last contention of plaintiff is that the trial court committed error in holding that defendant's married daughter, her husband and infant child were a part of defendant's "family." In support of this contention plaintiff cites several cases that have no application to the instant one upon the facts.

*Rock Island Bank and Trust Co. v. Lamont,* 361 Ill. 432, involved the question as to what constitutes a family within the meaning of the Homestead Act. The court, after citing certain provisions of the Homestead Act, holds that "*a family within the meaning of the Homestead Act* is not alone a collection of persons living together, but there must be an obligation, either legal or moral, upon someone who thus occupies the position of head of the house to support the others or some of them, and on the part of such others a corresponding state of dependence." (p. 435. Italics ours.) *Logue v. Van Almen,* 379 Ill. 208, also cited, involved an alleged Homestead estate. In *Scott v. Greene,* 242 Ill. App. 405, also cited by plaintiff, the court held that the adult daughter of the owner of an automobile, who, although living with her parents, was entirely self-supporting and paid for her board and all the expenses incident to her use of the car, was not a member of the owner's family within the rule rendering the head of a family who keeps an automobile for the use of his family liable for the negligence of members of the family while using it for a family purpose. While that case is not applicable to

·the instant one upon the facts, we may state that the "family purpose" doctrine is no longer the law in Illinois. (*Andersen v. Byrnes*, 344 Ill. 240.)

In *Policemen's Benev. Ass'n v. Hill*, 257 Ill. App. 138, it appeared that Edward Strum was a member of the Policemen's Benevolent Association of Chicago and received a benefit certificate of membership in which his wife was named as beneficiary for the sum of $2,000; that subsequently Mrs. Strum died and upon application of Strum a new certificate was issued in which Etta A. Hill, his deceased wife's sister, was named as beneficiary; that later Strum died and as there were various claimants for the proceeds of the certificate the Association filed a bill of interpleader. Etta A. Hill and nine heirs, nieces and nephews of Strum, filed answers. The chancellor awarded the proceeds of the certificate to Etta A. Hill and one of the heirs appealed from the decree. The opinion of the Appellate court, written by the late MR. JUSTICE McSURELY, states (pp. 139, 140, 141):

"The question presented to the chancellor was whether or not Etta A. Hill, the beneficiary named in the certificate, was a member of the family of the deceased and entitled to the proceeds under the provision of the certificate which names as one of the objects of the association: 'to establish a fund for the payment of death benefits to the families.'

"Etta A. Hill testified that she was the sister-in-law of Edward Strum, the deceased, and lived in his family for more than 20 years; that she resided with the family up to the time of Mrs. Strum's death, and continued to live there afterwards for about four years; that she contributed to the expenses of the household; that when Strum was taken ill he was taken to the hospital and that she continued to contribute to his comfort in the way of food and taking care of his clothes and laundry; that she afterwards took him to the Bethany Swedish Home and while

there she called upon him daily, administering to his comfort and wants; that then she took him in an ambulance to the American Hospital where he remained a week and a day, when he died; that while in the hospital she called on him once or twice a day; that she paid all the expenses of his funeral and burial; that during this time she was employed in various offices and contributed to the support of Strum's family out of her earnings.

"These and other circumstances which are virtually admitted furnished a sufficient basis for the conclusion of the chancellor that Etta A. Hill was a member of Edward Strum's family and entitled as the beneficiary named in the certificate to receive the proceeds thereof.

"The word 'family' has been given a broad application. It is defined by Webster as 'the collective body of persons who live in one house and under one head or manager.' Servants have sometimes been held members of a family. *Strawn v. Strawn,* 53 Ill. 263. In *Race v. Oldridge,* 90 Ill. 250, it was held that a friend of the defendant who was a boarder was a member of the family. No definite number of persons is necessary to constitute a family, although there must be at least two persons, and it is not essential that the persons actually reside together in one house. 25 C. J. 665, 666. While in *Rock v. Haas,* 110 Ill. 528, it was said that a residence together is essential to constitute a family, the court was there considering what was necessary for the creation of an estate of homestead. This distinguishes this case from the one under consideration. In *Women's Catholic Order of Foresters v. Heffernan,* 206 Ill. App. 70, the court had under consideration a situation very similar to that before us. The question was whether Katherine Heffernan was a member of the family of Winifred Ryan. These persons were not related, but for two years prior to

the death of Winifred Ryan they were close friends, occupying the same residence. It was held that this constituted, in a popular sense, a family, and the opinion also says:

"'It would seem to be reasonable, therefore, in such a case as the present, to consider the word "family" as meaning a collective body, consisting of two or more persons who live together, and between whom there are family relations of a domestic character.' (Citing *Carmichael v. Northwestern Mut. Ben. Ass'n*, 51 Mich. 494.)

"In *Women's Catholic Order of Foresters v. Heffernan*, 283 Ill. 429, the judgment of the Appellate Court was affirmed.

"With these considerations in mind, we are of the opinion that the decree of the chancellor awarding the money to Etta A. Hill was proper and the decree is affirmed."

In *Village of Riverside v. Reagan*, 270 Ill. App. 355, we had before us a somewhat unusual case. There, a mother, her children and stepchildren, and the spouses of some of them, were all living in a single three-story house. The Village sought to enjoin the defendants upon the ground that they were violating Section 4 of the Zoning Ordinance of the Village prohibiting the use, erection or alteration of buildings except those dwellings or buildings for residential purposes "of a single family only," and the question arose as to whether the building in question was occupied "by a single family." In passing upon this question we stated (pp. 365, 366):

"In the Century dictionary the word 'family' is defined as:

" 'The collective body of persons who form *one household* under *one head* and one domestic government, including parents, children, servants and as sometimes used even lodgers or boarders.'

"In Webster's dictionary the definition is:

" 'The collective body of persons who live in one house, and *under one head or manager; a household,* including parents, children and servants, and, as the case may be, lodgers or boarders.'

"In the Century dictionary the word 'household' is defined as:

" 'An organized family and whatever pertains to it as a whole; a domestic establishment'; and

" 'A family considered as consisting of all those who share in the privileges and duties of a common dwelling; the family, including servants and other permanent inmates.'

"In Webster's dictionary the definition of 'household' is:

" 'Those who dwell under the same roof and compose a family.'

"In *Race v. Oldridge,* 90 Ill. 250, 252, after quoting the definition of the word 'family,' as given by Webster and others, it is said:

" 'Thus, it is seen that the word has a broad and comprehensive meaning in general use. Bouvier says, the word has a restricted sense, which only includes the father, mother and children; but in a more enlarged sense it includes all individuals who live under the authority of another, and includes servants of a family. Thus, it is seen, its legal meaning differs but little from its general acceptation.'

"In *Hogg v. Lobb's Ex'r,* 7 Houston (Delaware) 399, 400, 401, it is said:

" 'The rule for the construction of statutes is that unless words used in them have some special meaning in law (that is, technical meaning), they shall be taken to have been used in their ordinary sense or meaning, that sense in which they are usually understood in common speech. Regarding the word *family* then . . . in this latter sense, for it has no technical meaning, we say to you that it means the household,

or collection of persons, including husband, wife, children, lodgers, servants, residing together and receiving diet, lodging, etc., from a common supply, or source —and subject to rules for their government, as members of such household, with respect to such membership.'

"In *Norwegian Old People's Home Society v. Wilson*, 176 Ill. 94, 99, it is said:

" 'The word "family" is used in various significations, some more restricted, others more extended, the general scope and purview of the statute or of the will having to be considered in each case. It is used to indicate, first, the whole body of persons who form one household, thus including also servants; second, the parents with their children, whether they dwell together or not; and third, the whole group of persons closely related by blood.' "

We concluded (pp. 366, 367):

"'In view of the above definitions of the word 'family,' and considering the restrictions imposed by section 4 of the Zoning Ordinance in question upon the use, erection or alteration of buildings *except* those dwellings or buildings for residential purposes *'of a single family only,'* and also considering the facts and circumstances of the present case as disclosed by the evidence, we are of the opinion that the trial court was right in holding that the dwelling house on the premises, at the time of the filing of complainant's bill, was occupied 'by a single family . . . with Ellen W. Reagan as its head' and that defendants had not violated and were not violating said section 4 of the Zoning Ordinance, as charged in complainant's bill. We think that the contention of complainant's counsel, viz., that the word 'family' as used in said ordinance, means 'one or more individuals, *sleeping, cooking and eating* on the premises *as a single housekeeping unit,'* is without substantial merit, because it is a too-limited meaning, especially as such a meaning is not given in the

ordinance to the word and is contrary to its meaning as defined by lexicographers and as generally understood by the public."

It is a matter of common knowledge that there is a great shortage of homes in this community at the present time, that eviction proceedings are constantly increasing, and it would be highly inequitable to narrow the meaning of the word "family" in cases like the instant one. We approve the finding of the trial court that Mr. and Mrs. Brenner and their child constituted part of defendant's family.

The judgment of the Municipal Court of Chicago is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.