Wilma Sanchez, Appellant, v. Ella Randall, Appellee.

Gen. No. 48,208.

First District, Third Division.

May 17, 1961.

Howard H. Levin and Arnold L. Cohen, of Chicago, for appellant.

Rudolph L. Janega, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

An action was brought in the Municipal Court of Chicago by Wilma Sanchez, hereafter referred to as the plaintiff, against Ella Randall, hereafter referred to as the defendant. The action demanded damages for injuries alleged to have been sustained on the premises of the defendant.

The suit was filed on October 16, 1959. The bailiff's return showed service on defendant Ella Randall at her usual place of abode by delivering a copy of the summons, together with a praecipe, statement of claim and affidavit, "to Mrs. W. Kellogg, housekeeper, a person of her family of the age of ten years or upwards and informing her of the contents thereof, in the City of Chicago, this 22 day of Oct. 1959 and also by sending through the United States Post Office, on the 23 day of Oct. 1959, a copy of the within writ in a sealed envelope, with postage fully prepaid, addressed to the said defendant at such usual place of abode." It is signed by William G. Milota, bailiff, by A. E. Fink, deputy.

A default was entered against the defendant for failure to appear on October 28, 1959, and the judgment order was entered on December 7, 1959, which judgment order recited that the court having heard evidence found for the plaintiff against the defendant and assessed the plaintiff's damages at the sum of $2,800. Judgment was entered accordingly.

The defendant filed a notice on the plaintiff that a motion to quash the summons and return and to vacate the default and judgment would be heard on March 4, 1960. The motion was based on the ground that the court had no jurisdiction of the defendant. In an attached affidavit of the defendant she states: "2. That she was never personally served with summons or complaint in the cause. 3. That no summons was ever given to her by a member of her family. 4. That she did not know of the default order being entered until receiving notice of an execution writ from

the Bailiff of the Municipal Court." She further states that she used due diligence in acting to set aside the order and sets out a meritorious defense to the action. The motion was continued from time to time, and a hearing was held before the trial judge April 18, 1960. At that hearing the defendant testified that she had for six and one-half years lived at and owned the building commonly described as 1001 North Francisco Avenue; that she occupied a six-room apartment; that she managed the building, collected the rents etc. She stated that there are three bedrooms in her apartment and that she rented space to Mrs. Kellogg and Marie Lott who also lived there. She testified that the three bedrooms in the apartment were occupied, one by her, and the other two by Mrs. Kellogg and Marie Lott; that the three of them shared the kitchen; that both Mrs. Kellogg and Marie Lott had the use of the whole house; and that Mrs. Kellogg had lived in the apartment about a month before the time the summons was served. The defendant further stated that Mrs. Kellogg is not very well, not able to walk, and gets around in a wheel chair; that she cannot see well and was seventy-two years old; that Mrs. Kellogg was not related to her (the defendant) by blood or marriage; that Mrs. Kellogg was not the defendant's housekeeper or maid; and that Mrs. Kellogg did not give her the summons in this action. Defendant stated that she received a letter from the plaintiff's lawyer; that she sent her son to talk to the plaintiff; that he was told the case was going to be dropped; that the letter referred to had been received before January 1, 1960; and that thereupon she contacted her lawyer. She also testified that she, Mrs. Kellogg and Marie Lott all worked together; that they shared in cleaning the house and lived together as a unit, eating in the same kitchen. She stated that she was served sometime in January with an execution on the judgment.

43

The hearing was continued to April 22nd, when Arthur E. Fink, the deputy bailiff, testified that he served the summons on October 22, 1959 and that the return on the summons was made by him. He served it on Mrs. Kellogg, who was seated in a wheel chair. She opened the door and he gave her the summons, telling her he was a deputy bailiff. He asked for the defendant and Mrs. Kellogg told him that she was not in. He told Mrs. Kellogg that he was giving her the summons, stated that it is a summons, and told her that she should make sure and give it to defendant. Mrs. Kellogg gave the bailiff her name and he left.

The court told the attorney for the defendant that he must file an affidavit to conform to the proof, and he thereupon filed an affidavit made out by the defendant on May 6, 1960. In that affidavit she states, among other things: "2. That she was never personally served with summons or complaint in the cause. 3. That no summons was ever given to her by a member of her family. 4. That the woman who the Bailiff allegedly served was not a member of affiant's family. She had subleased a room in the apartment of the affiant for only four (4) weeks prior to the alleged date of service and was over 75 years old, infirm, confined to a wheel chair, and was senile." On May 6th a further hearing was held in the trial court, and the court entered an order vacating the default judgment and gave the defendant leave to file an appearance.

The plaintiff filed a motion for a rehearing in which she objected, among other things, to the second affidavit filed by defendant on the ground that it went beyond the evidence inasmuch as it stated that Mrs. Kellogg was senile, which was not supported by any evidence and is a mere conclusion of the affiant. On May 25th the trial court heard the motion for rehearing, and the trial court stated: "The court rules that

she [Mrs. Kellogg] was not a member of the household and that the service was not proper." The court denied the motion for a rehearing. From the order of the court vacating the judgment this appeal is taken.

Section 13.2 of Rule 1 of the Municipal Court of Chicago is the same as Section 13.2 of the Civil Practice Act (Ill. Rev. Stat. 1959, chap. 110, par. 13.2), with reference to service of process on individuals. It provides that an individual may be served by leaving a copy of the summons at his usual place of abode with some person of the family of the age of ten years or upwards, and informing that person of the contents thereof, provided that the officer making service shall also send a copy of the summons to the defendant by mail. In the instant case the return of the officer indicates that the service was made in accordance with the rule.

The entire question in this case seems to be based upon whether or not Mrs. Kellogg could be considered a member of the family of the defendant.

Service of process at the defendant's usual place of abode has been held sufficient where the copy of the process was left with a maidservant of the defendant. Lewis v. West Side Trust & Sav. Bank, 286 Ill. App. 130, 2 N.E.2d 976. It has also been held that leaving a copy of the process with the defendant's sister at defendant's usual place of abode was sufficient even though the sister lived in an adjoining apartment in the same building. Anchor Finance Corp. v. Miller, 8 Ill. App.2d 326, 132 N.E.2d 81. In the latter case the admitted facts were that the copy of the summons was left with the sister and that the defendant received a copy from the sheriff by mail.

Liberty Nat. Bank v. Zimmerman, 333 Ill. App. 94, 77 N.E.2d 49, discusses the meaning of the word "family," and reaches the conclusion that a daughter,

son-in-law and ten month old child who moved into the premises occupied by the defendant and his wife constituted part of the defendant's family. The court says (quoting from Policemen's Benev. Ass'n v. Hill, 257 Ill. App. 138):

> " 'The word "family" has been given a broad application. It is defined by Webster as "the collective body of persons who live in one house and under one head or manager." Servants have sometimes been held members of a family. Strawn v. Strawn, 53 Ill. 263. In Race v. Oldridge, 90 Ill. 250, it was held that a friend of the defendant who was a boarder was a member of the family. No definite number of persons is necessary to constitute a family, although there must be at least two persons, and it is not essential that the persons actually reside together in one house. 25 C. J. 665, 666. . . .
>
> " ' "it would seem to be reasonable, therefore, in such a case as the present, to consider the word 'family' as meaning a collective body, consisting of two or more persons who live together, and between whom there are family relations of a domestic character." (Citing Carmichael v. Northwestern Mut. Ben. Ass'n, 51 Mich. 494.)' "

In Race v. Oldridge, 90 Ill. 250, in considering what is meant by the term "family," the court says (p. 252):

> "The primary meaning, as given by Webster, is, 'the collective body of persons who live in one house and under one head or manager; a household, including parents, children and servants, and, as the case may be, lodgers or boarders.' Thus, it is seen that the word has a broad and comprehensive meaning in general use. Bouvier says, the

46

word has a restricted sense, which only includes the father, mother and children; but in a more enlarged sense it includes all individuals who live under the authority of another, and includes servants of a family. Thus, it is seen, its legal meaning differs but little from its general acceptation."

A case very similar to the case before us was recently decided by the Appellate Court in the Second District, Edward Hines Lumber Co. v. Smith, 29 Ill. App.2d 35, 172 N.E.2d 429. In that case a default judgment had been entered against the defendant Smith. Smith filed a petition to vacate the judgment and to quash service of summons, alleging that he had never been served with summons. The court denied the petition, and the defendant took an appeal from that order. In that case there was substituted service on the defendant. The sheriff made a return that he had served defendant at his usual place of abode by leaving a copy of the summons with " 'Mrs. Keough, a person of the family of said defendant, of the age of ten years or upwards, and informing such person of the contents thereof' " and that a true copy of the summons had been mailed to the defendant. A hearing was had and it appeared from the evidence that Mrs. Keough lived, together with her husband, in Wheaton, Illinois; that the defendant had rented a room from them for four or five years; that the deputy from the sheriff's office had come to the Keough home several times and asked for the defendant, and each time the defendant was not there; that on December 3, 1958 the deputy sheriff again came and told Mrs. Keough that he had a summons for Smith. Mrs. Keough said she could not accept it, and the deputy said he would give it to her anyway. The deputy said he was going to tie the summons on the door knob. She further said that she did not take the summons

off the door knob, nor did she touch it, but the next morning the summons was gone and she said she told the defendant about the deputy sheriff coming to see him but she did not tell him there was a summons tied on the door knob. Mr. Keough testified that Smith had instructed him not to accept anything for him and that he was acting on those instructions. The defendant testified that he had lived with the Keoughs for a period of four years, that on or about December 3rd he did not receive any document or summons at the Keough home, that he never received a summons by mail at that address, and that his mailing address was in South Elgin.

The court affirmed the order of the trial court refusing to set aside the judgment and quashing the summons, and held that the Keough residence was the usual place of abode of the defendant and that the Keoughs were persons of the defendant's "family" within the meaning of the Act. The court says:

> "The word 'family' has a broad and comprehensive meaning in general use. The meaning of the word 'family' as used in Section 13.2 of the Civil Practice Act, supra, must be construed in relation to the general purpose of the provision for substituted service. Anchor Finance Corp. v. Miller, 8 Ill.App.2d 326, 132 N.E.2d 81."

The court held that the defendant was a permanent resident in the Keough home and that for the purpose of substituted service of summons he was a member of the Keough family.

In Anchor Finance Corp. v. Miller, supra, the court says (p. 330):

> "The meaning of the word 'family' as used in section 13.2 of the Civil Practice Act . . . must be construed in relation to the general purpose of the provision for substituted service, which is

48

stated in 72 C.J.S. Process § 48 (p. 1060) to be as follows: 'Such statutes presuppose that such a relation of confidence exists between the person with whom the copy is left and defendant that notice will reach defendant; they assume that such person will deliver the process or copy to defendant or in some way give him notice thereof.' "

In the instant case it is not contended that the service was not made at the usual place of abode of the defendant. Mrs. Kellogg rented a room from the defendant. She was not a temporary guest but she for all intents and purposes permanently resided in the home of the defendant. She had the common use of the whole house, including the kitchen where they all ate. She, the defendant and Marie Lott all worked together in cleaning the house and lived together as a unit. There is no evidence that Mrs. Kellogg was not mentally competent. Mental incompetency is not proved by the fact that she was aged, had poor eyesight and used a wheel chair.

In the two affidavits filed by the defendant she states that no copy of the summons was ever given to her by "a member of her family." In the second affidavit she alleges that Mrs. Kellogg was not a member of her family. Each denial of her receiving a copy of the summons from Mrs. Kellogg is a negative pregnant. In her testimony the defendant stated that Mrs. Kellogg did not give her any summons in the case involving Wilma Sanchez. The form of the two affidavits raises a doubt as to whether or not Mrs. Kellogg did not actually give her a copy of the summons left by the bailiff.

The defendant complains that the return named Mrs. Kellogg as "housekeeper" while she did not occupy that position. In Lewis v. West Side Trust & Sav. Bank, supra, the return on the summons showed that the summons was served upon "Jane Doe, a house-

49

maid of the defendant," and the court held that the name of the maid was not of any importance except to identify her as the servant of the defendant, which fact was admitted. Nor in the case before us does the erroneous designation of Mrs. Kellogg as housekeeper have any effect upon the validity of the service of the summons. In Glineberg v. Evans, 341 Ill. App. 332, 93 N.E.2d 520 (Abst.), the court says: "The purpose of a summons is to notify a party to appear in a certain court at a certain time to answer a complaint made against him. . . ." The defendant does not deny that she received a copy of the summons through the mail, and it is very doubtful that she was not actually given a copy of the summons by Mrs. Kellogg. Under the facts of the instant case Mrs. Kellogg could properly be considered as a member of the family of the defendant and the bailiff in serving her complied with the rule of the Municipal Court of Chicago governing substituted service.

The order of the Municipal Court of Chicago is reversed.

Reversed.

SCHWARTZ, P. J., and DEMPSEY, J., concur.