COLLINS D. WHITE

*v.*

THOMAS J. PRIMM.

1. JURISDICTION—*service of process.* There are no presumptions in favor of courts of limited and inferior jurisdiction, and where, in a suit upon a judgment rendered before a justice of the peace in Missouri, the record showed the process in the original suit to have been served "by leaving a copy at the usual place of abode of the defendant with a white member of the family above the age of fourteen years," *Held,* that this return furnished no evidence that the justice acquired jurisdiction, without proof that this mode of service was authorized by the Missouri statute.

2. SAME— A hotel or boarding house at which a stranger from another State is sojourning for a few days, is not to be considered his "usual place of abode," within the meaning of this statute.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. Y. RICE, Judge, presiding.

This was an action brought by plaintiff in error, against defendant in error, before a justice of the peace, to recover the amount of a foreign judgment rendered in St. Louis county, Mo., against defendant and in favor of the plaintiff.

Judgment was rendered by the justice in favor of plaintiff, and against defendant; and from that judgment defendant in error took an appeal to the Circuit Court of Sangamon county.

The cause was tried in the Circuit Court by the judge, the parties waiving a jury, and judgment was rendered in favor of defendant in error and against plaintiff in error, for costs.

Plaintiff in error then moved for a new trial; the court overruled the motion, and plaintiff in error excepted.

The facts are stated in the opinion.

Mr. N. M. BROADWELL, for the Plaintiff in Error.

Mr. W. H. HERNDON, for the defendant in Error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action brought upon a judgment rendered by a justice of the peace in St. Louis, Missouri. Besides other material stipulations in the record is the following : " It is admitted in this case that justices of the peace in the State of Missouri, have jurisdiction as in this record specified and done." We have found some difficulty in determining in what sense this agreement was made by the parties. If intended as an admission that the justice had jurisdiction both of the parties and the subject-matter, it would dispose of the case. We cannot, however, understand it in this sense, because the question of jurisdiction is the only point made in the briefs submitted to us by counsel, and seems to have been the only question in the court below. Evidence was heard on both sides in regard to the question as to whether the justice acquired jurisdiction of the person.

Again, if the agreement means, merely that the justice had jurisdiction to render a judgment for the amount here claimed, the case would be free from difficulty. For the return of the Missouri constable upon the summons was, that he had served it "by leaving a copy at the usual place of abode of the defendant, with a white member of the family above the age of fourteen years." But as no intendments are indulged in favor of courts of limited and inferior jurisdiction, and as this is a mode of service unknown to the common law, in the absence of the above stipulation we should say that this return furnished no evidence that the justice acquired jurisdiction, without proof in the court below that this mode of service was authorized by the Missouri statute.

We presume, however, that the parties designed to be understood as agreeing that justices in Missouri had jurisdiction to the amount of the judgment, and that this mode of service is recognized by the laws of Missouri, leaving it an open question as to whether the service was in fact made, that is, whether the return of the officer was true.

The summons under which the judgment was rendered in St. Louis, purports to have been served on the 4th of March, 1856.

The defendant below proved, by various witnesses, that he had been a resident of Menard county in this State some twenty years, and that he was not known by any of the witnesses, his neighbors, to have been absent from home during the year 1856. He also proved by another witness, that the witness saw him in Madison county in this State, about ten miles east of St. Louis, on the first and second days of March, 1856, and that he came to that place from St. Louis.

This evidence very conclusively disposes of whatever *prima facie* character may attach to the return. The plaintiff met it by calling two witnesses who testified, that they saw the defendant in St. Louis "during the first of the month of March, A. D. 1856, and that he was there at that time for two or three weeks, stopping at a private boarding-house."

All this evidence is reconcilable upon the theory that he had been temporarily staying at St. Louis, and left for his home on the 1st of March. But we are not prepared, however, to recognize a doctrine so perilous to private rights as it clearly would be, to admit, that the hotel or boarding-house of a large city, where a stranger may be sojourning for a few days, is to be considered "his usual place of abode" within the meaning of this statute. What would be the probability that actual notice of the pendency of a suit against him would reach a stranger at a hotel, by merely leaving a copy of the summons with any one of the three or four hundred persons who might be guests at the same house, and all strangers to each other? For if this can be considered the "usual place of abode," the same rule would make all the guests "members of the family," and the copy might be left with any one of them. This would be but a mockery of that personal service, on which alone the law professes to act, where the person is sought to be found. This statute of Missouri is evidently designed to secure personal notice, and it ought not to receive a construction inconsistent with such intent, and being in derogation of the common law, it should be strictly construed.

We find no error in the record.

*Judgment affirmed.*