Village of Riverside, Appellant, v. Ellen W. Reagan
et al., Appellees.

Gen. No. 36,244.

Opinion filed April 11, 1933.

TENNEY, HARDING, SHERMAN & ROGERS, for appellant; S. ASHLEY GUTHRIE and GEORGE E. HOWELL, of counsel.

CAMERON & HEATH, for appellees; JOHN R. HEATH, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

By this appeal it is sought to reverse a decree of the circuit court, entered June 29, 1932, wherein the court after a hearing dismissed complainant's bill for want of equity at its costs.

The five defendants to the bill are Ellen W. Reagan, Keturah Reagan Faurot, Ethel Reagan Hellyer, Barbara Reagan and Ruth Reagan. The bill is based upon certain provisions of the Zoning Ordinance of the complainant village of May 5, 1922, as amended, and it prays that defendants may be permanently enjoined

"(a) From maintaining said premises, or the residence thereon, and from using, and permitting the use thereof, as a dwelling *for more than one family;* and

"(b) From permitting more than one room in said residence to remain fitted out with a sink, stove, or other kitchen fixtures adapting such room to use as a kitchen for the preparation of food."

The bill further prays that defendants may be required by court order "to remove forthwith all such sinks, stoves and other kitchen fixtures installed in more than one room of said residence and adapting such room for use as a kitchen for the preparation of food."

The record discloses that at the conclusion of the hearing of evidence as to the issues as framed by the pleadings, and after the arguments of respective counsel had been had, the court made the following "decision":

"This bill is for an injunction to restrain the defendants from maintaining the premises in the Village of Riverside in its present condition, alleging that it violates section 4 of the Village Zoning Ordinance. The premises in question are occupied by the owner of the property, also by one who owns the mortgage thereon, and also by the other members of the family. After listening to the evidence and arguments of counsel, the court is of the opinion that the premises are now occupied by a *single family* of Herbert E. Reagan and Ellen W. Reagan, *with Ellen W. Reagan as its head,* and that there is no violation of the Village Zoning Ordinance; therefore, the defendants are re-

lieved of the charges that the building in its present condition violates section 4 of the Village Zoning Ordinance.''

In complainant's bill, filed August 3, 1931, it is alleged in substance that the defendant Keturah Reagan Faurot owns an undivided 2/5ths interest, and the defendants Ethel Reagan Hellyer, Barbara Reagan and Ruth Reagan each own an undivided 1/5th interest in the premises (describing them), situated in the Village of Riverside, Illinois; that the defendant, Ellen W. Reagan, is the holder of a mortgage from Mrs. Faurot, recorded April 8, 1926, covering an undivided 2/5ths interest in the premises; that Ellen W. Reagan is, and was at all times herein mentioned, an occupant of the premises; that at the time of the making of the alterations as hereinafter mentioned, she was ''in control'' of the premises with the knowledge and consent of the other defendants; that for a long time prior to the making of the alterations there was on the premises a large three-story frame building, which was adapted for use, and used, only as a residence for a single family, and which contained common living rooms and only one dining room and one kitchen for the use of the family occupying it; that there was no other building upon the land except an outbuilding used as a barn or garage, as an accessory to the residence; that the premises are situated in ''Residence District A,'' as defined by an ordinance of the village of May 5, 1922, as amended, and hereinafter referred to as the ''Zoning Ordinance''; and that section 4 of the ordinance contains the following provisions defining and restricting the use of premises in said ''Residence District A'':

''Section 4. Residence District 'A', Within the bounds of Residence District 'A' no building or premises shall be *used* and no building shall be erected, *remodeled or altered* which is arranged, intended or

designed to be used except for one or more of the following uses:

"FIRST: Dwellings or buildings for residential purposes *of a single family only,* including office of physician, surgeon or other professional practitioner, when situated in the same dwelling or building used by such physician, surgeon or other professional practitioner as his private residence or dwelling;

"SECOND: Churches, Schools not conducted for profit, and Libraries;

"THIRD: Accessory uses customarily incident to the above uses, including uses for professions and home occupations engaged in by the occupants of a dwelling in such dwelling, not involving the conduct of a retail business on the premises, but not including, however, garages arranged or designed to accommodate more than four motor vehicles."

It is further alleged in the bill that during the months of April and May, 1931, Ellen W. Reagan, with the knowledge and consent of the other defendants and with a view of making said residence adapted to use as a "three family dwelling" in violation of the terms of said Zoning Ordinance, "made alterations therein"; that the alterations "included particularly the installation of sinks and kitchen fixtures, respectively, in two rooms—one on the second floor and one on the third floor, and that each of the rooms was fitted out and made adaptable for use as a kitchen"; that in addition, "a large number (more than four) of new electric outlets was made, and the rear porches on the second and third floors were inclosed, and, as complainant is informed and believes, a stove has been installed in each of said rooms for the preparation of food"; that the result of the alterations "has been to transform said residence into a building suitable for use as a dwelling by three separate families," each of which has been provided with separate sleeping and eating quarters and separate kitchens for the prepara-

tion of its food; that defendants *"intend to use,* and permit the use of, said building *as a dwelling for three families* unless restrained by this court''; that no permits were applied for, or issued by complainant, for the making of said alterations, and complainant was not advised that they had been made until about May 14, 1931, when certain complaints were made to the village manager, one O'Brien, that ''the effect of them *might be* to transform said building into a three family dwelling, contrary to the provisions of the Zoning Ordinance''; that about June 1, 1931, O'Brien, as such manager, after interviewing the plumbing contractor who had installed said kitchen fixtures, reported to complainant's board of trustees as to the complaints, etc.; that on June 7, at the request of the board, O'Brien made an inspection of the premises and ''found said alterations to be substantially of the nature hereinbefore set forth''; that thereafter on June 16, O'Brien wrote Ellen W. Reagan a letter stating in part that ''the Board deems these alterations to constitute a violation of the Zoning Ordinance, which prohibits the construction on your property of a dwelling *for the use of more than one family,''* and that he (O'Brien) had been instructed ''to notify you to remove all sinks and fixtures installed for the purpose of making more than one room in your house adapted for use as a kitchen, and to make such other changes as may be required to make your house conform to the regulations of the Zoning Ordinance,'' and further stating that ''these changes must be made within 10 days, or the Village will be required to take such steps as may be necessary to enforce compliance with the ordinance''; that thereafter, in reply to the letter, complainant received a request from the attorney for Mrs. Reagan for a reconsideration of the matter, which request was denied; that thereafter on July 10, 1931, O'Brien sent a written notice to Mrs. Reagan, stating in part that the board of trustees, after full considera-

tion, "has been unable to modify its original conclusion that these alterations constitute a violation of the Zoning Ordinance," and that, therefore, you are notified that "the kitchen fixtures mentioned in my letter of June 16th must be removed, and that, if this is not done within the next week, I have been instructed to turn the matter over to the Village Attorney for appropriate action."

It is further alleged in the bill that although more than a week has elapsed since the notice was sent, no reply thereto has been received; that the changes in the premises have not been made; that complainant has no adequate relief except in a court of equity; and that unless an injunction is granted as prayed, defendants will be enabled to maintain a three-family dwelling upon the premises, in violation of the Zoning Ordinance to the irreparable injury of complainant and the property owners in Residence District "A."

In the answer of the defendants, filed September 22, 1931, and as amended, they admitted the passage of the Zoning Ordinance, that it was in full force and effect when said alterations or interior changes were made, that section 4 of the ordinance is in the language as set out in the bill, and that the premises are situated in "Residence District A," as created by the ordinance. They further admitted that the allegations as to the title of the premises, and as to Mrs. Ellen W. Reagan being an occupant and in control thereof, are substantially true. They alleged in substance that Mrs. Reagan's occupancy is a "joint" one with the other defendants and "with her other children hereinafter named"; that the title to the premises descended, upon the death prior to 1917 of Ethel MacArthur Reagan (their mother) to Archibald, Keturah, Ethel, Barbara and Ruth Reagan; that Ethel MacArthur Reagan also left her surviving her husband, Herbert E. Reagan; that in 1917 Herbert E. Reagan, then living with his said children in the building, married as his second

wife Ellen Ware Goddard (sued as Ellen W. Reagan);
that she was then the widow of Joseph Sterling God-
dard, deceased, and by him had had five children, viz.,
Caroline, Elizabeth, Joseph Sterling, Jr., Lester and
Jacqueline Goddard; that after the marriage of Her-
bert E. Reagan and Ellen W. Goddard (Reagan) they
resided in said building with the five children of Her-
bert E. by his former marriage, and with the five chil-
dren of Ellen W., by her former marriage; that while
so residing there were born to Herbert E. and Ellen
W. Reagan two other children, viz., Herbert E. Reagan,
Jr., and Benjamin Reagan; that thereafter Herbert E.
(until his death) and his wife, Ellen W., continued to
live in the building as their home with the said 12
children; that thereafter Herbert E. Reagan died,
leaving him surviving his widow, Ellen W. Reagan,
the five children by his first marriage, and the two
children by his second marriage; that thereafter Ellen
W. Reagan continued to reside in the dwelling house
with said 12 children; that thereafter Archibald Rea-
gan attained his majority and left the home and has
since resided elsewhere; that he conveyed to his sister,
Keturah, his interest in the premises and thereby the
title to the premises became vested, and still so re-
mains, as follows: An undivided 2/5ths in Keturah
and an undivided 1/5th each in Ethel, Barbara and
Ruth Reagan; that to obtain the means for the pur-
chase of said 1/5th interest from Archibald, Keturah
borrowed money from her stepmother, Ellen W. Rea-
gan, and executed to her a mortgage upon said 2/5ths
interest, which mortgage is still outstanding; that
thereafter Keturah Reagan married George S. Faurot
and they established their home elsewhere; that Ethel
Reagan married George S. Hellyer and they are now
domiciled in said building; that of the Goddard chil-
dren, two have married—Caroline to Robert F. Grimm,
and Elizabeth to John H. Silverthorne, and each with
her husband is now domiciled in said building; that

it is now also the home of Ellen W. Reagan; of her stepdaughters, Barbara and Ruth Reagan; of her sons, Lester O. Goddard and Joseph S. Goddard, Jr.; of her daughter, Jacqueline Goddard; and of her sons, Herbert E. Jr., and Benjamin Reagan; and that the premises "are not occupied by more than one family but are now occupied by a group, closely related and living together with provisions for partial separation, and constituting, as defendants believe, *a single family.*"

And defendants further alleged in substance that during April and May, 1931, certain alterations were made in the interior of the dwelling house; that there were installed in one room on the second floor, and also in one room on the third floor, "a kitchen sink with necessary plumbing and an electric cooking stove," so that "cooking arrangements might be made for two of the young married couples of the family"; that also "certain furniture was removed and installed to transform bedrooms into dining rooms"; that no change in the front or exterior of the building was made; that the building has had for a period of more than 40 years, and now has, its main entrance upon and across a veranda at its front or street side; that from the veranda, upon the main floor, there was and is a French door by which entrance can be had to the original family dining room; that there was and is a carriage entrance on the northerly side of the house, fronting upon the common driveway, and a rear or kitchen door leading to the main kitchen; that the house is about 40 years old, and remains in outward appearance a large family residence, in which there are many rooms with a common heating plant in the basement; that the house has in no respect the appearance of an apartment building, either on its exterior or in its interior; that its external aspect is unchanged and that it now appears the same as it did long prior to the adoption by the village of said

Zoning Ordinance; that "it is not feasible, nor is it planned or desired, to rent the separate suites of rooms to others than those in said family, *because all of the house is intercommunicating*"; that defendants "have assured the Village authorities that they have no intention whatever of converting said premises into three separate apartments which could be rented to or used by separate families"; that the alterations, as made, do not constitute such a transformation of the use of said dwelling house as violates the provisions of the Zoning Ordinance; that in making the alterations defendants "had no intention of violating said ordinance or in transforming the building in violation thereof"; that if the ordinance should be so construed "as to forbid defendants to continue to live together in their said dwelling house in the manner in which they are at present living therein," then defendants say that "said ordinance is an unreasonable one and unconstitutional and void"; that if there was any failure to apply for or secure a permit for the making of said alterations, the same was the fault of the plumber and electrician, who installed the sink and electrical outlets for the stoves, and not of defendants, who did not know of such requirements and had no purpose of evading the same; that by defendant's acts in making the alterations, the village "has not suffered and will not suffer any injury to its property," and that said acts "do not injuriously affect any public property or public civil rights." To the answer complainant filed a replication.

On the hearing before the chancellor the facts as alleged in defendant's answer (in addition to those admitted) were substantially proved. It further appeared from defendant's evidence that the principal defendant, Ellen W. Reagan, was first married in 1905 to said J. Sterling Goddard; that of the five children born to them, Caroline, the eldest, was at the time of the hearing 23 years of age; that when their father

died in 1916 all were of tender years; that Ellen W. Reagan married Herbert E. Reagan in 1918 and that at that time she and her five children became domiciled in the building; that at that time also Reagan's five children were there domiciled—the oldest (Archibald) being 13 years old and the youngest (Ruth) being 5 years old; that two children, Herbert and Benjamin, thereafter were born to Herbert E. and Ellen W. Reagan; that all 12 children continued to live in the dwelling house with Herbert E. and Ellen W. Reagan, as one family, until 1922, when Mr. Reagan died; that for a considerable time thereafter the 12 children continued to live there as one family, with Ellen W. Reagan as *the active head of the family,* which she thereafter continued to be; that the house is a large one, old fashioned, and designed and built to accommodate a large family, having about 20 rooms, exclusive of the bathrooms; that it stands on a lot having a frontage on Nuttall Road of 100 feet and a depth of 220 feet, and is a considerable distance back from the road; that the first child to leave the home was Archibald who in 1924 took up his abode elsewhere; that thereafter Keturah married and has since lived elsewhere; that in 1927 Caroline married Robert Grimm and for a time they resided elsewhere; that in 1928 Elizabeth married John Silverthorne and for a time they resided elsewhere; that during these last mentioned years the other eight children continued to live in the family home, which was managed by Ellen W. Reagan; that during the spring of 1931, it was arranged, with the consent of Mrs. Reagan and the other children, that Caroline, her husband (Robert Grimm), and their two-year-old child, and also that Elizabeth, her husband (John Silverthorne) and their baby, should return to the family home to live, and it was also arranged that Ethel (who had been at college and was about to be married to George Hellyer) after her

marriage should live with her husband in the family home; that these arrangements subsequently were consummated, and were the occasion or cause for the alterations being made under the supervision and direction of Ellen W. Reagan; that prior to the hearing a baby was born to the Hellyers; and that at the time of the hearing there were 17 persons, bearing such relations to each other as shown, living in the family home.

In the Century dictionary the word "family" is defined as:

"The collective body of persons who form *one household* under *one head* and one domestic government, including parents, children, servants and as sometimes used even lodgers or boarders."

In Webster's dictionary the definition is:

"The collective body of persons who live in one house, and *under one head or manager; a household,* including parents, children and servants, and, as the case may be, lodgers or boarders."

In the Century dictionary the word "household" is defined as:

"An organized family and whatever pertains to it as a whole; a domestic establishment"; and

"A family considered as consisting of all those who share in the privileges and duties of a common dwelling; the family, including servants and other permanent inmates."

In Webster's dictionary the definition of "household" is:

"Those who dwell under the same roof and compose a family."

In *Race v. Oldridge,* 90 Ill. 250, 252, after quoting the definition of the word "family," as given by Webster and others, it is said:

"Thus, it is seen that the word has a broad and comprehensive meaning in general use. Bouvier says,

the word has a restricted sense, which only includes the father, mother and children; but in a more enlarged sense it includes all individuals who live under the authority of another, and includes servants of a family. Thus, it is seen, its legal meaning differs but little from its general acceptation.''

In *Hogg v. Lobb's Ex'r,* 7 Houston (Delaware) 399, 400, 401, it is said:

"The rule for the construction of statutes is that unless words used in them have some special meaning in law (that is, technical meaning), they shall be taken to have been used in their ordinary sense or meaning, that sense in which they are usually understood in common speech. Regarding the word *family* then . . . in this latter sense, for it has no technical meaning, we say to you that it means the household, or collection of persons, including husband, wife, children, lodgers, servants, residing together and receiving diet, lodging, etc., from a common supply, or source—and subject to rules for their government, as members of such household, with respect to such membership.''

In *Norwegian Old People's Home Society v. Wilson,* 176 Ill. 94, 99, it is said:

"The word 'family' is used in various significations, some more restricted, others more extended, the general scope and purview of the statute or of the will having to be considered in each case. It is used to indicate, first, the whole body of persons who form one household, thus including also servants; second, the parents with their children, whether they dwell together or not; and third, the whole group of persons closely related by blood.''

In view of the above definitions of the word "family," and considering the restrictions imposed by section 4 of the Zoning Ordinance in question upon the use, erection or alteration of buildings *except* those

dwellings or buildings for residential purposes *"of a single family only,"* and also considering the facts and circumstances of the present case as disclosed by the evidence, we are of the opinion that the trial court was right in holding that the dwelling house on the premises, at the time of the filing of complainant's bill, was occupied "by a single family . . . with Ellen W. Reagan as its head" and that defendants had not violated and were not violating said section 4 of the Zoning Ordinance, as charged in complainant's bill. We think that the contention of complainant's counsel, viz., that the word "family," as used in said ordinance, means "one or more individuals, *sleeping, cooking and eating* on the premises *as a single housekeeping unit,"* is without substantial merit, because it is a too-limited meaning, especially as such a meaning is not given in the ordinance to the word and is contrary to its meaning as defined by lexicographers and as generally understood by the public. And we are also of the opinion that there is no equity in complainant's bill and that the court was amply justified in dismissing it for want of equity.

Accordingly, the decree appealed from is affirmed.

*Affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.