Harvey C. ORTON and Theodore J. Isaacs, Plaintiffs-Appellants,

v.

WOODS OIL AND GAS CO., Defendant-Appellee.

No. 12105.

United States Court of Appeals Seventh Circuit.

Nov. 7, 1957.

Jerome F. Dixon, Chicago, Ill., for appellant.

James J. Morrison, New Orleans, La., Paul B. O'Flaherty, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge and HASTINGS and PARKINSON, Circuit Judges.

HASTINGS, Circuit Judge.

This is an action for money alleged to be due and owing plaintiffs (appellants) for professional services rendered to defendant corporation (appellee). It was commenced in the Circuit Court of Cook County, Illinois, and was removed to the United States District Court upon petition of defendant alleging a diversity of citizenship. The district court sustained defendant's motion to dismiss the complaint construing it to be a motion to quash the return of service of summons upon the ground that there was no jurisdiction over defendant's person in Illinois. From this order quashing the return of service of summons upon defendant, the plaintiffs appeal. The district court disposed of the motion solely upon affidavits of each of the respective parties.

Plaintiff, Orton, is a business engineer and consultant, and plaintiff, Isaacs, is a lawyer, and each maintains his office and place of business in Chicago, Illinois.

Defendant is a Delaware corporation with its principal office and place of business in New Orleans, Louisiana, and is engaged generally in the operation and management of oil, gas and mineral leaseholds in several states other than Illinois.

On and prior to April 20, 1953, one James L. Woods operated a sole proprietorship in New Orleans, Louisiana, under the name of Woods Oil and Gas Co. On or about April 20, 1953, Woods employed Orton in New Orleans to assist him in the financing of his operations, the incorporation of his business, the registration of its securities with the Securities and Exchange Commission for sale to the public and the procurement of an underwriter for the sale of the registered stock.

On or about May 14, 1953, Woods employed Isaacs to prepare the articles of incorporation and papers necessary for the registration of the stock for public sale under the provisions of the Securities and Exchange Act. On September 3, 1954, a charter was issued under the laws of Delaware. Thereafter, Woods transferred his oil and gas interests to the defendant corporation. Orton was elected a director and vice-president of the corporation on August 10, 1955, and served until his resignation on September 12, 1956. Isaacs terminated his services for the corporation on October 1, 1956. Both plaintiffs performed services for defendant from the date of incorporation until they quit on the above dates. Orton claimed $15,000 for his services and $1894.43 for his expenses and Isaacs claimed $13,000 for his services.

It appears from the affidavits of the parties that plaintiffs generally rendered the services for which they were employed in the city of Chicago. Isaacs prepared the articles of incorporation and procured the issuance of the Delaware charter, prepared (with the assistance of Orton in some instances) the papers and documents for registering the common stock with the Securities and Exchange Commission, and generally performed the legal services required for these matters. Orton consulted with representatives of defendant relative to its financing, as-

sisted Isaacs in his registration work, arranged for printing a prospectus and registration statement in Chicago, unsuccessfully sought to secure a participating underwriter in Chicago for the stock sale, consulted with the New Orleans principal underwriter and arranged for the services of accountants and consulted with them in the preparation of an audit of defendant's financial condition in connection with the stock registration. In the registration statement filed by defendant with the Securities and Exchange Commission, defendant designated both plaintiffs as its "agents for service", giving their names and Chicago addresses. On August 29, 1955, defendant filed a form S-1 registration statement with the Commission acknowledging the debts herein claimed by plaintiffs.

It is conceded that plaintiffs generally did their work in Chicago in performing their services for defendant, including long distance telephone conferences with defendant's representatives in New Orleans, the sending of telegrams, letters and other communications from Chicago, and the drafting of the various documents. Also, that the incorporation papers were filed in Delaware and that the registration papers were processed in Washington, D. C. Likewise, that defendant was never licensed or otherwise qualified to do business in Illinois, had no office or place of business of its own in Illinois, had no property in Illinois and sold no stock in Illinois. Finally, that defendant's sole business contact with the State of Illinois was its dealings with plaintiffs.

The summons in question was issued by the clerk of the Circuit Court of Cook County, Illinois, and was personally served on an officer or agent of defendant corporation at New Orleans, Louisiana. Process was served on defendant outside of Illinois under the provisions of the Illinois Civil Practice Act, which provides for such service where a defendant has transacted business in Illinois. The provisions of this Act in question are Sections 16 and 17, Ch. 110, Illinois Revised Statutes, 1955.

The applicable part of Section 16 is as follows:

"(1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; otherwise it shall have the force and effect of service by publication.

"(2) The service of summons shall be made in like manner as service within this State, by any person over 21 years of age not a party to the action. No order of court is required. An affidavit of the server shall be filed stating the time, manner and place of service. The court may consider the affidavit, or any other competent proofs, in determining whether service has been properly made."

Section 17 is as follows:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) *The transaction of any business within this State;*

"(b) The commission of a tortious act within this State;

"(c) The ownership, use, or possession of any real estate situated in this State;

"(d) Contracting to insure any person, property or risk located within this State at the time of contracting.

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

"(4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law. [1933, June 23, Laws 1933, p. 784, art. 3, Sec. 17; 1955, July 19, Laws 1955, p. 2238, Sec. 1.]" (Our emphasis.)

The ultimate contested issue here is whether or not the professional services performed in Chicago by plaintiffs under employment by defendant in New Orleans constitute *the transaction of any business in Illinois* by defendant so as to make it amenable to suit in Illinois upon process served outside the state. The district court held "that it does not appear that the cause of action stated in the complaint arises from 'the transaction of any business within this State,'" and ordered "that the return of service of summons upon the defendant be, and it is hereby, quashed."

It is pointed out in the comments of the joint committee which drafted the revision of this Act and in the historical and practice notes of Albert E. Jenner, Jr. and Philip W. Tone, following Section 16 that, except for the provision of subsection (1), Section 16 is substantially the same as in the former act. Smith-Hurd, Ill.Ann.Stat., Ch. 110, Sec. 16, pp. 158-9.

However, at pages 164–172, these able commentators point out that Section 17 is wholly new and is in line with the general trend to expand the *in personam* jurisdiction of the Illinois courts over non-residents having "contacts, ties or relations" with the state, or having such "minimum contacts" with the state as to bring it within the rule laid down in In-

ternational Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. These comments and notes trace the growth of such legislation under the changing interpretation given the due process clause of the Fourteenth Amendment to the federal constitution.

Following the adoption of the 1955 revision, John M. O'Connor, Jr. and James M. Goff, of the Chicago Bar, published a scholarly article on "Expanded Concepts of State Jurisdiction over Non-Residents: The Illinois Revised Practice Act", 31 Notre Dame Lawyer 223 (March, 1956). There, again, the historical and constitutional aspects of Section 17 are developed culminating in the International Shoe case in the establishment of "a completely new concept of the due process limitations on jurisdiction over non-resident individuals and foreign corporations." See also Cleary and Seder, "Extended Jurisdictional Bases for the Illinois Courts", 50 Northwestern Univ.Law Rev. 599 (1955).

The amendments to the Illinois Civil Practice Act authorizing entry of judgments *in personam* on personal service of summons outside the state as applied to a non-resident have been held constitutional in a recent case by the Illinois Supreme Court. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (June 17, 1957). In that case the defendant appliance dealer, a Wisconsin resident, sent one of his employees to deliver a stove from Wisconsin to the plaintiff customer in Illinois. Defendant's employee requested plaintiff to assist in unloading the stove from a truck and in so doing the employee negligently pushed the stove severing one finger on plaintiff's right hand and injuring another. Summons was personally served on defendant in Wisconsin. The Supreme Court found jurisdiction under Section 17(1) (b), supra, and held that the amendments were not unconstitutional as denying the non-resident due process of law.

In the instant case we were called upon to construe Section 17(1) (a) and determine whether or not defendant was engaged in the transaction of any business in Illinois. Both parties and the above mentioned writers place primary emphasis on the International Shoe case. In that case, a non-resident corporation employed salesmen in the State of Washington to take orders for merchandise, but without authority to enter into contracts in that state. The orders were transmitted to the office of the corporation in St. Louis for acceptance or rejection. The State of Washington brought an action in its state court against the non-resident corporation to compel the payment of contributions to the state unemployment compensation fund pursuant to a state statute. The Supreme Court, in an opinion by Mr. Chief Justice Stone, held that the activities of the salesmen within the state were such as to render the employer corporation amenable to such a suit. In reaching its conclusion that the non-resident corporation had not been denied due process, the court stated 320 U.S. at pages 316, 319, 66 S.Ct. at pages 158, 159:

"* * * But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, *he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'* * * *. (Our emphasis.)

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. (Citations omitted.) Whether due process is satisfied must depend rather upon the quality and nature of the activity

in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." (Citations omitted.)

O'Connor and Goff, at page 237 of their article above referred to, commenting upon the interpretation to be given Section 17(1) (a), say: "There are no precise standards for the measurement of the extent to which jurisdiction has been expanded. The court, in determining whether the cause of action before it arose out of defendant's transaction of business in the state, will apply substantially the same test as is used for due process purposes."

Do the facts in this case meet the standards we are given for their measurement? At the outset, it appears that plaintiffs were initially contacted and employed, not by defendant corporation, but by its predecessor, James L. Woods, operating an individual proprietorship. The services to be performed by plaintiffs were to incorporate the sole proprietorship business and to register its stock for public sale so that the new corporation could engage in the business of owning and operating its oil properties in Louisiana, Texas and Oklahoma. The professional services rendered by plaintiffs were of a high order and were required to breathe the first breath of corporate life into defendant, and were a necessary prerequisite for it to transact business *anywhere*. Having completed their professional assignments to enable defendant to engage in business for the purposes defined in its charter, it does not appear in the record that plaintiffs did anything more. Likewise, there is no showing that defendant had any other "contacts, ties or relations" with the State of Illinois.

There is no contention that defendant ever engaged in the oil and gas business in Illinois, or transacted any business in this state in the furtherance of its corporate purposes. It merely accepted the services of an engineer-consultant and a lawyer to charter the corporation in Delaware and register its securities in Washington, D. C., for public sale. The fact that plaintiffs did most of their actual work in Chicago in accomplishing their assignments seems to us to be a slender thread on which to hang their claim for jurisdiction over defendant in Illinois. We do not believe that defendant had such "minimum contacts" with the territory of the forum chosen by plaintiffs to subject it to a judgment *in personam*. To do so, would "offend traditional notions of fair play and substantial justice."

In the cases cited by plaintiffs we find a factual situation quite different from the case at bar. In the International Shoe case the non-resident corporation had its salesmen actively at work in the territory of the forum carrying out its corporate purposes. In Nelson v. Miller, supra, the defendant sent its representative into Illinois to complete a sale made in the course of his business operation. In other cases we find that the activities engaged in were "neither irregular nor casual", but were "systematic and continuous", resulting in a volume of business for the employer.

Finally, the designation of plaintiffs as "agents for service" in the registration statement filed with the Securities and Exchange Commission is at best a procedural function and brings no strength to their contentions.

We shall not engage in a further definition of "the transaction of any business within this State." It is sufficient here to hold that the performance of the professional services by plaintiffs for the benefit of defendant as herein outlined, standing alone, are insufficient to bring defendant within any reasonable construction of the Act in question. To rule otherwise would be to stretch the doctrine of the International Shoe case to the breaking point, and to expand the Illinois concept of state jurisdiction over

nonresidents beyond the limit imposed by due process.

The order of the district court quashing the return of service of summons upon the defendant was proper and is

Affirmed.