Edward Hines Lumber Co., a Corporation, Appellee, v. H. C. Smith and Don Erickson, d/b/a Glen Builders. H. C. Smith, Appellant.

Gen. No. 11,387.

Second District, Second Division.
January 16, 1961.

 

Martin Faier, of Chicago, for appellant.

John P. Loftus and Joseph J. Fitzgerald, of Chicago, for appellee.

WRIGHT, J.

Defendant, H. C. Smith, filed in the trial court a petition to vacate a default judgment which had been entered against him for $725.09 and to quash service of summons. Defendant's petition to vacate the default judgment alleged that he was never served with summons and sets up the defense that he was never indebted to the plaintiff in any amount. After a hearing before the court, without a jury, an order was entered denying the petition to vacate the judgment and quash service of summons. From this order defendant appeals.

Defendant contends that the default judgment entered against him is void for want of service of summons upon him, and that the trial court abused its discretion in refusing to vacate the judgment and to quash service. The plaintiff argues that the court acquired jurisdiction of the person of the defendant by substituted service as provided for by Section 13.2 of the Civil Practice Act (Ill. Rev. Stat., Chap. 110). This section, in part, provides the method for substituted service of summons:

"... service of summons upon an individual defendant shall be made ... by leaving a copy at his usual place of abode, with some person of the family, of the age of ten years or upwards, and informing that person of the contents thereof, provided the officer or other person making service shall also send a copy of the summons in a sealed

37

envelope with postage fully prepaid, addressed to the defendant at his usual place of abode. The certificate of the officer or affidavit of the person that he has sent the copy in pursuance of this section is evidenced that he has done so."

The return on the summons in dispute was signed by the Sheriff of Du Page County, Illinois, by his deputy, and stated, in part, the following:

"I have this 3rd. day of December, 1958, served the within summons upon the within named defendant, H. C. Smith, d/b/a Glen Builders by leaving a true copy thereof for said defendant at Wheaton, Illinois., at his usual place of abode, with Mrs. Keough, a person of the family of said defendant, of the age of ten years or upwards, and informing such person of the contents thereof. I certify that I have also on the 11th day of December, 1958, deposited in the United States Post Office at Wheaton, Illinois, a true copy of said summons in a sealed envelope with postage thereon fully prepaid, addressed to said defendant at Wheaton, in Du Page County, Illinois, his usual place of abode."

A proper determination of this case calls for a brief review of the testimony of Mrs. Genevieve Keough, Mr. John P. Keough and the defendant, Smith, who were the only persons from which evidence was adduced at the hearing. Mrs. Keough testified that she and her husband, John P. Keough, lived at 1110 Scott Street, Wheaton, Illinois, and that the defendant rented a room from them for a period of four to five years from February, 1955, to August, 1959; during this period of time the defendant continuously paid his rent for the room to the Keoughs. Mrs. Keough stated that someone from the Sheriff's Office of Du Page County visited her home at 1110 Scott Street some four or five

38

times prior to December 3, 1958, and on each occasion asked for the defendant but Mr. Smith was not there. Mrs. Keough further testified that the deputy Sheriff came to her home on December 3, 1958, and asked for the defendant and was told by her that defendant was not at home. She testified that the deputy then said, "well, I have a summons for him", and Mrs. Keough said, "well I cannot accept it." The deputy then said, "I am going to give it to you anyway." Mrs. Keough stated that at that time she called her husband and that the deputy told her husband that he was going to tie the summons on the door knob. She further stated that she did not know whether the summons was tied to the door knob, but that she did hear her husband state that it was not the way to serve a summons. She further stated that she did not take the summons off the door knob, that she did not touch it; that the next morning the summons was gone. Upon questioning by the court, Mrs. Keough stated that she told the defendant about the deputy Sheriff being there to see him on December 3rd, but she did not tell the defendant that there was a summons tied on the door knob because it was not there at that time.

Mr. Keough testified that the defendant, Smith, instructed him not to accept anything for him and that he was acting on those instructions. He stated that the defendant did not specify "summons." He further stated that the deputy Sheriff told him that he was there looking for Mr. Smith and that he told the deputy that Mr. Smith was not home, and stated that he did not tell the deputy that Mr. Smith did not live there but did tell the deputy that he maintained a room in the Keough home. He further stated that the deputy had the summons or paper in his hand; that he did not attempt to give him the summons; that the screen door was closed and that he could not have pushed it through the screen door. He further stated that the

deputy told him what he had and who he was looking for and then attached it to the door. He further stated that he did not make it his business to take it off the door and that he told the deputy he could leave it wherever he wanted to as long as it was not inside the house.

The defendant testified that he had lived with the Keoughs for a period of four years commencing in 1955, and that on or about December 3, 1958, his room rent was paid. The defendant further stated that on or about December 3, 1958, he did not receive any document or summons at the Keough home and that he never received a summons by mail at the Scott Street address. The defendant maintained that his mailing address was Box 245, South Elgin, Illinois, which is the address of his father and was the address which appears upon his driver's license. Defendant further testified that he did not know how long it had been since he last lived permanently with his father, but that he stayed there on occasions when it was convenient for him to do so. Defendant further stated that he kept clothes in three places and that he did not know for sure whether he slept in the room at the Keough home on December 3, 1958.

There are two specific questions presented for determination: (1) Was the residence of the Keoughs the defendant's "usual place of abode" as contemplated by Section 13.2 of the Civil Practice Act, supra? (2) Were the Keoughs persons of the defendant's "family" within the meaning of the act?

Defendant cites White v. Primm, 36 Ill. 416, in support of his contention that the Keough home was not his "usual place of abode." In that case the summons was purportedly served on defendant by leaving a copy at a boarding house in the City of St. Louis where defendant was temporarily staying. The court held that a hotel or boarding house in a large city where a

stranger from another state may be sojourning temporarily cannot be considered his "usual place of abode" within the meaning of the statute providing for leaving a copy of summons at the "usual place of abode."

We believe the White case, supra, is clearly distinguishable from the case at bar. In the instant case, the defendant was residing in the Keough home and had so resided and paid his rent on a monthly basis for some four or five years. The Keough home was not a hotel or a boarding house, but on the contrary, a private home where the Keoughs and defendant resided. The defendant was not merely staying there as a temporary guest as was the situation in the White case, supra., but on the contrary, the record discloses without question that defendant, Smith, was permanently residing in the Keough home.

We have examined the other authorities cited by defendant in support of his contention that the Keough home was not his "usual place of abode" but we do not believe them to be in point. We conclude that on December 3, 1958, the defendant's "usual place of abode" was at the home of the Keoughs on 1110 Scott Street, Wheaton, Illinois.

The word "family" has a broad and comprehensive meaning in general use. The meaning of the word "family" as used in Section 13.2 of the Civil Practice Act, supra, must be construed in relation to the general purpose of the provision for substituted service. Anchor Finance Corp. v. Miller, 8 Ill.App.2d 326, 132 N.E.2d 81.

The word "family" is defined in Webster's dictionary as: "A collective body of persons who live in one house, and under one head or manager; a household, including parents, children and servants, and, as the case may be, lodgers or boarders."

In Village of Riverside v. Reagan, 270 Ill. App. 355, the court in discussing the definition of the word

41

"family" and its scope cited with approval, Hogg v. Lobb's Ex'r, 7 Houston (Delaware) 399, wherein the court stated:

> "The rule for the construction of statutes is that unless words used in them have some special meaning in law (that is, technical meaning), they shall be taken to have been used in their ordinary sense or meaning, that sense in which they are usually understood in common speech. Regarding the word family then . . . in this latter sense, for it has no technical meaning, we say to you that it means the household, or collection of persons, including husband, wife, children, lodgers, servants, residing together and receiving diet, lodging, etc., from a common supply, or source—and subject to rules for their government, as members of such household, with respect to such membership."

██ The return on the summons indicates that it was served on defendant as provided by Section 13.2 of the Civil Practice Act, supra. The courts do not favor those who seek to evade service of summons and the settled rule is that the return of an officer made in the due course of his official duty and under the sanction of his official oath will not be set aside merely upon the uncorroborated testimony of the person on whom the process has been served, but only upon clear and satisfactory evidence. Hatmaker v. Hatmaker, 337 Ill. App. 175, 85 N.E.2d 345.

The record is replete with evidence of repeated calls by the Sheriff or a deputy at the Keough home looking for the defendant. On each of these visits the officer asked for the defendant and was informed by Mrs. Keough that defendant was not at home.

██ The evidence discloses that the defendant gave the Keoughs specific instructions not to accept any

papers for him. The defendant was not a mere temporary guest in the Keough home, but on the contrary, the evidence shows conclusively that he was a permanent resident in the Keough home and had been for some four or five years, and we believe that for the purpose of substituted service of summons the defendant was a member of the Keough family as contemplated by Section 13.2 of the Civil Practice Act, supra, which provides for substituted service of summons.

■ The deputy did all that was possible under the circumstances to leave a copy of the summons with a member of the defendant's family as provided in the act, and since Mrs. Keough refused to accept it, the officer was justified in leaving the summons as he did and we believe he complied with the spirit if not with the letter of the act, and that the summons was properly served so as to give defendant notice of the pending suit.

■ Can a defendant circumvent the provisions of the act which provides for substituted service of process by instructing the members of his family not to accept a copy of a summons? We think not. To hold otherwise would render the act useless in many cases and encourage the evasion of service of process.

The Trial Judge who had an opportunity to observe the witnesses and hear their testimony determined the issues in favor of the plaintiff and we perceive no valid reason for disturbing his findings. Anchor Finance Corp., v. Miller, supra.

The order of the trial court denying the petition to vacate the default judgment and quash service of summons is affirmed.

Affirmed.

CROW, P. J. and SPIVEY, J., concur.