**GELDERMANN & CO., INC.,**
**Plaintiff,**

v.

**John A. DUSSAULT, Individually and d/b/a Pinedale Polled Hereford Ranch, Defendant.**

**No. 74 C 1662.**

United States District Court,
N. D. Illinois, E. D.

Oct. 25, 1974.

James L. Fox, Moses, Gibbons, Abramson & Fox, Chicago, Ill., for plaintiff.

Stephen M. Murray, Lord, Bissell & Brook, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause before the Court on defendant's motion to quash service of summons and to dismiss for lack of personal jurisdiction.

Plaintiff is an Illinois corporation engaged as a broker in commodities futures which maintains branch offices in a number of different states. The defendant is a citizen and resident of Pinedale, Wyoming. The complaint contains two counts, Count I alleging liability under the terms of a customer agreement executed by the defendant, and Count II purportedly stating a claim in tort for an allegedly false representation made by defendant to plaintiff's officer, John T. Geldermann. Count I alleges that in September, 1973 the defendant opened a trading account with plaintiff and executed a customer agreement, a customer data sheet and a hedge letter, which documents were attached to the complaint as exhibits A, B and C respectively. Count I further alleges that subsequent thereto plaintiff purchased feeder cattle and pork belly futures contracts for defendant's account and that commencing on May 1, 1974 began, as agent for defendant, to accept delivery of 101 lots of feeder cattle. It is further alleged that defendant failed to reimburse plaintiff for the amounts advanced by plaintiff in accepting delivery of 79 lots, and that as a consequence thereof, after liquidating defendant's account, defendant is indebted to plaintiff under section 5 of the aforementioned customer agreement in the amount of $176,051.77.

Count II of the complaint alleges that prior to May 1, 1974 defendant told plaintiff's officer, John T. Geldermann, that sufficient funds were immediately available to defendant to permit him to meet his obligations to plaintiff upon the latter accepting delivery of 101 lots of feeder cattle. It is further alleged that this representation was false, and was relied upon by plaintiff to its detriment.

Plaintiff invokes the subject matter jurisdiction of this Court on the basis of 28 U.S.C. § 1332, and seeks to assert personal jurisdiction over this defendant on the basis of the Illinois long-arm statute (Chapter 110, Ill.Rev.Stat., 1973, §§ 17(1)(a) and (b)). Service of process over this defendant was purportedly made on July 26, 1974 by delivery of a copy of the summons and complaint to one Richard C. Rutledge, an employee of

the defendant, at the Pinedale Polled Hereford Ranch, Pinedale, Wyoming, owned and operated by the defendant.

The affidavits submitted to the Court in support of this motion show that the summons was delivered as follows: On July 26, 1974 Rutledge was approached by a visitor who informed him that he had some papers to be served and directed Rutledge to accept the summons. Rutledge stated that he was not authorized to accept service of papers of any kind, that he was simply an employee of Mr. Dussault and that he would not and could not accept service of any papers. At that point the process server dropped the papers on the ground about 10 yards from Rutledge and left the scene. Whether or not the nature of the papers were explained to Rutledge is a factual question disputed by the parties.

I. SERVICE OF PROCESS ON AN EMPLOYEE OF DEFENDANT, NOT RESIDING WITH OR A MEMBER OF DEFENDANT'S HOUSEHOLD, AND NOT AUTHORIZED BY DEFENDANT TO ACCEPT SERVICE OF PROCESS IS INVALID UNDER THE APPLICABLE PROVISIONS OF THE ILLINOIS CIVIL PRACTICE ACT.

■ Service of process in this case was purportedly made under Rule 4(d)(7) of the Federal Rules of Civil Procedure which states in pertinent part:

"Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

The statute available in the instant case under Rule 4(d)(7) is the Illinois long-arm statute, Chapter 110, Ill.Rev.Stat., 1973, § 17. Service thereunder must be made according to Chapter 110, Ill.Rev. Stat., 1973, § 13.2, which states:

"Except as otherwise expressly provided, service of summons upon an individual defendant shall be made (1) by leaving a copy thereof with the defendant personally or (2) by leaving a copy at his usual place of abode, with some person of the family, of the age of 10 years or upwards, and informing that person of the contents thereof, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his usual place of abode. The certificate of the officer or affidavit of the person that he has sent the copy in pursuance of this section is evidence that he has done so."

■ Service in the instant case upon Richard C. Rutledge, the defendant's foreman, does not comply with requirements of Illinois law. Rutledge is not now and was not on July 26, 1974 a resident of defendant's home. He was not a member of defendant's household. Although he was an employee of the defendant he was not authorized to accept service of process on behalf of the defendant.

Plaintiff in opposition to the motion to quash service argues that the "spirit of the law and its purpose must be considered". It points out that the specially appointed United States Deputy Marshal spent approximately 32 hours in seeking to make service upon the person of the defendant.[1] However, there is no

1. Tom Perfetto, the specially appointed United States Deputy Marshal for service, stated in his affidavit that:

"Tom Perfetto, being first duly sworn, on oath deposes and says:

By this Affidavit I set forth the efforts made by me to serve the defendant, John A. Dussault, on behalf of the plaintiff and as a specially appointed United States Deputy Marshal for this purpose.

doubt that the defendant was successful in eluding him and was never personally served.

The Court fully agrees with plaintiff that the service provisions of the Illinois and Federal statutes were not intended to establish rules for a child's game of hide-and-seek. This Court has never sought to enforce technicalities where the spirit of rules would be defeated. Nevertheless, difficulties in obtaining service of process cannot form the basis for ignoring the clear statutory requirements. The rule that requires personal service is not a technicality but rather a mainstay in the foundation of due process upon which our legal system is built. The Court cannot lightly ignore the requirements of the rule merely because plaintiff has made a good—yet unsuccessful—attempt at compliance.

The law in Illinois requiring service of process upon the defendant personally or by leaving summons with a member of his family at his usual place of abode was discussed recently in Cumbo v. Cumbo, 9 Ill.App.3d 1056, 293 N.E.2d 694 (1973). The court found that if a summons was left at the abode with someone other than the defendant that person must be a permanent resident— or some rough equivalent. The court held that the service in *Cumbo* was insufficient because it was made on defendant's son who was visiting in defendant's home for two days. Similarly in the instant case service upon defendant's employee, Richard C. Rutledge, was insufficient since he was not a permanent resident in the home of the person sought to be served. In his affidavit Rutledge stated that he lived in the vicinity of the defendant's residence. It

The defendant resides with Mrs. Dussault at 1785–29th Street in Ogden, Utah. Initially upon my receiving this assignment, I made several trips to the Dussault home at that address, seeking to locate either Mr. Dussault or his wife. I was unsuccessful. I was advised that Mr. Dussault was in Sacramento, and staying at the Rodeway Inn at that city. I therefore traveled to Sacramento, California and on July 16, 1974, I located Mr. Dussault at the Rodeway Inn. I knocked on his door, and he answered from the inside. He refused, however, to open the door. While I waited at the door I heard him make a telephone call. I then called him on the telephone. He refused to talk about the service of process on the telephone, and refused to see me. He did, however, state that he would meet me in the lobby of the motel the following morning at 8:00 o'clock A.M. I remained at or in the vicinity of the lobby of this motel throughout the evening and night. At approximately 3:00 o'clock A.M. on the 16th of July, I had left the lobby and was in my room when the motel manager called and advised me that Mr. Dussault was checking out of the motel. I ran from my room and outside the motel, where Mr. Dussault was getting into his car. I yelled at him and tried to stop him, but I was unable to do so. It appeared that he clearly saw me but refused to stop. I tried to locate Mr. Dussault at various motels in the Sacramento area on the 17th

day of July, but I was unsuccessful, and returned to Ogden, Utah.

On July 19, 1974, I was advised that Mrs. Dussault was in Pinedale, Wyoming. I travelled by plane with an assistant to Pinedale, and at the Dussault ranch building the ranch foreman, Rick Rutledge, advised me that Mrs. Dussault had left by car about two hours earlier to meet her husband in Salt Lake City, Utah. I returned by air flight to Ogden and travelled immediately to Salt Lake City and sought to locate the Dussaults in various hotels and motels in that city, but I was unsuccessful. Thereafter, and until July 26, 1974, I made numerous attempts to locate either Mr. Dussault or Mrs. Dussault at their home in Ogden, Utah, but I was unsuccessful.

On July 26, 1974, I returned to Pinedale, Wyoming, again with an assistant, and I talked to the Ranch Foreman, Rick Rutledge. He was extremely uncooperative. He threatened to have me arrested for trespassing upon the Dussault property. I advised him that I was acting as an agent of the United States Marshal, and that I was going to serve him as managing agent of the defendant's business. He refused to accept the papers. I therefore dropped the papers at his feet, and then returned to Ogden, Utah.

Exclusive of travel time, I spent approximately 32 hours seeking to make service upon the defendant."

is clear, however, that he maintained his own personal residence at least 100 yards distant from defendant's home. The Illinois courts have upheld service upon maids,[2] and even landlords of rooming houses,[3] but, never upon the next door neighbor. The distinction made by the courts is based on the requirement of the rule that service be at the defendant's abode upon a family member, who is also a permanent resident. "Family" was given an extended interpretation in Edward Hines Lumber Co. v. Smith, 29 Ill.App.2d 35, 172 N.E. 2d 429 (1961) wherein the court defined "family" as used in section 13.2(a) as:

> "A collective body of persons who live in one house, and under one head or manager; a household, including parents, children and servants, and, as the case may be, lodgers or boarders" 29 Ill.App.2d at 43, 172 N.E.2d at 432.

■ Plaintiff is correct in its assertion that the courts do not favor those who seek to evade service of summons. However, in addition of the failure to physically serve the defendant there is a serious question as to whether jurisdiction is proper under the Illinois long-arm statute.

## II. THE ASSERTION OF PERSONAL JURISDICTION OVER THE DEFENDANT IN THIS CASE WOULD VIOLATE DUE PROCESS.

■ In order to satisfy the requirements of due process under the Fourteenth Amendment, a court must find that a defendant has had those "minimum contacts" with the state deemed necessary to subject him to the personal jurisdiction of the courts of that state. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The purpose of the long-arm statute is to extend the personal jurisdiction of the Illinois courts to the

greatest extent permitted by the due process clause and the "minimum contacts" test. Grobark v. Addo Machine Co., 16 Ill.2d 426, 158 N.E.2d 73 (1959). This test as interpreted by the state and federal courts of Illinois has not been satisfied in this instance.

A review of the facts as presented by affidavits submitted by the parties demonstrates that there was not sufficient "minimum contacts". The defendant states that his initial contact with the plaintiff was made at plaintiff's branch office in Ogden, Utah. The customer agreement as well as the other documents attached as exhibits to the complaint were discussed and executed in either Pinedale, Wyoming, or Ogden, Utah. The defendant maintains no office or other place of business in the State of Illinois and at no time material hereto did the defendant visit the State of Illinois for the purpose of transacting business with plaintiff or for any other purpose. However, subsequent transactions after reaching the agreement were conducted between the defendant and plaintiff's company in Illinois through a number of letters, telegrams and telephone calls in April and May of 1974.

The Court recognizes that the mere fact that defendant was not physically in the State of Illinois is not determinative. Such physical presence is not always required in order to come within the purview of the statute. Gray v. American Radiator and Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1962). In addition the Illinois Appellate Court recently held that even a single telephone communication to Illinois may be sufficient to give the court jurisdiction under the long-arm statute. Cook Associates v. Colonial Broach & Machine, 14 Ill.App.3d 965, 304 N.E.2d 27 (1973).

It is the opinion of the Court, however, that the letters, telegrams and phone calls do not amount to the "minimum contacts" required. Desert Palace,

2. Lewis v. West Side Trust and Savings Bank, 286 Ill.App. 130, 2 N.E.2d 976 (1936).

3. Edward Hines Lumber Co. v. Smith, 29 Ill.App.2d 35, 172 N.E.2d 429 (1961).

Inc. v. Salisbury, 401 F.2d 320 (7th Cir. 1968); Davis v. Nehl, 14 Ill.App.3d 318, 302 N.E.2d 382 (1973). This cause of action appears to arise out of the transaction of business (i.e., the execution of the agreement) which occurred in another state. Furthermore, the defendant states that the "minimum contacts" by mail and telephone were initiated by plaintiff. There is really no set formula or rule of thumb for determining whether there are sufficient minimum contacts short of ascertaining what is fair and reasonable in the circumstances or a particular case. Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481 (7th Cir. 1968).

This Court recently faced a similar fact situation in Rosenthal & Co. v. Dodick, 365 F.Supp. 847 (N.D.Ill.1973). In that case a Chicago Commodities brokerage firm sued to recover amounts allegedly due under a customer agreement executed by a resident of New York. The defendant had dealt only with the broker's branch office in New York, and had never come to Illinois for the purpose of transacting business with the plaintiff. In discussing whether the defendant had submitted to personal jurisdiction in Illinois this Court stated:

> "Thus, the relevant inquiry is whether the defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum" 365 F. Supp. at 850.

This Court continued:

> "The relationship between defendant and plaintiff was initiated in New York and New Jersey. The transaction of business between plaintiff and defendant was conducted exclusively in New York where the commodities were respectively purchased and sold . . . the unilateral action of plaintiff in sending confirmations and statements of account to defendant from its Chicago office . . . cannot satisfy the requirement of minimum contact with Illinois because

it is the acts of the defendant which are relevant" 365 F.Supp. at 850.

In concluding that the defendant was not amenable to personal jurisdiction in Illinois this Court stated:

> "It is offensive to the concept of due process and reasonableness to conclude that a brokerage firm with a New York office can compel a New York resident defendant to stand trial in Illinois as a result of the transaction of business between the parties at the plaintiff's New York Office" 365 F. Supp. at 850.

It is true that in *Rosenthal* this Court assumed, on the basis of the uncontroverted affidavit of the defendant, that the purchases were executed on the New York Commodities Exchange. The fact that in the instant case feeder cattle futures contracts were purchased on the Chicago Mercantile Exchange is of no significance, however, for purposes of determining whether the defendant is subject to personal jurisdiction. At the present time the only Commodities exchange on which feeder cattle futures contracts can be purchased is the Chicago Mercantile Exchange. The contract under which plaintiff bases its claim is a form contract, composed substantially of boilerplate provisions, which was executed in Pinedale, Wyoming, and delivered to plaintiff at its branch office in Ogden, Utah. All requests by the defendant to purchase futures contracts were made to plaintiff's office in Utah, and the fact that defendant's requests with respect to feeder cattle contracts could only be met by executing transactions on the Chicago Mercantile Exchange cannot be viewed as an act by defendant by which he purposely availed himself of the benefits of the laws of Illinois. Hanson v. Denckla, *supra,* 357 U.S. at 253, 78 S.Ct. 1228.

In view of its decision in Rosenthal & Co. v. Dodick, *supra,* if this Court were to uphold the exercise of personal jurisdiction over this defendant the result would be that anyone purchasing feeder

cattle futures contracts, necessarily executed in Illinois, would be amenable to the personal jurisdiction of Illinois Courts. This would be the case regardless of the location of the purchaser, and despite the fact that the entire transaction, in so far as the purchaser is concerned, took place outside of Illinois. Such a result is not constitutionally permissible and is manifestly unfair to persons in the position of this defendant who would thereby be subjected to personal jurisdiction in the State of Illinois.

In Geneva Industries, Inc. v. Copeland Construction Corp., 312 F.Supp. 186 (N.D.Ill.1970) Judge Will held that where an Illinois corporation solicits business through an agent located in another state, customers, by dealing with the out of state agent, do not thereby submit to the jurisdiction of the Illinois courts. In evaluating the question before it, the Court stated:

"If the legal position for which Geneva is contending were correct, anyone in any state who bought anything by mail from an Illinois based manufacturer or sales organization would be subject to the jurisdiction of the Illinois courts. The notion that any customer of an Illinois based mail order house such as Sears Roebuck or Montgomery Ward would be subject to the jurisdiction of Illinois courts is obviously violative of the most minimal standard of minimum contacts and the fundamental structure of the federal system. In addition, it may be noted that the instant case is even less amenable to a determination that Illinois *in personam* jurisdiction is proper than the case of an out of state purchaser from an Illinois mail order house, since in the instant case, the record is clear that the contractual relationship involved was initiated in the foreign jurisdiction by an agent of the Illinois plaintiff. In sum, a finding of minimum contacts in the instant case would render the requirement of due process a nullity" 312 F.Supp. 186, 188.

Plaintiff also alleges in Count II of the complaint that defendant committed a "tortious act" within the state by making fraudulent representations to plaintiff's officer, John Geldermann, in a telephone conversation with Geldermann in Chicago. Allegedly Dussault represented to Geldermann and Company that he had sufficient available credit to finance all of his transactions with plaintiff. Thus, plaintiff contends that it detrimentally relied on the representations so as to sustain injury in this state.

This allegation appears to be somewhat tenuous in light of modern day credit practices. In addition the affidavit of Mr. Caton states unequivocally that the defendant had a line of credit of up to $1,800,000 which was arranged to finance the purchase of cattle to be pastured on defendant's ranch. Mr. Caton further states that at at no time did the bank curtail Mr. Dussault's credit or represent to third parties that the credit was suspended. In paragraph 11 of his supplementary affidavit the defendant stated that his net worth at the time of the alleged misrepresentation was 3.2 million dollars, an amount which included in excess of $1,000,000 in listed securities. In view of these facts Count II cannot be used as a vehicle for obtaining jurisdiction over the person of the defendant.

III. THE PERFORMANCE OF PROFESSIONAL SERVICES IN ILLINOIS IS NOT SUFFICIENT TO SUBMIT THOSE FOR WHOM THOSE SERVICES WERE RENDERED TO PERSONAL JURISDICTION IN ILLINOIS.

It has long been the rule in the Seventh Circuit that the mere performances of professional services in Illinois on behalf of an out of state client is not in itself sufficient to subject the foreign party to *in personam* jurisdiction in Illinois. Orton v. Woods Oil and Gas Co., 249 F.2d 198 (7th Cir. 1957); Bonan v. Leach, 22 F.R.D. 117 (E.D.Ill. 1957). The Court in *Orton* stated:

"It is sufficient here to hold that the performance of the professional services by plaintiffs for the benefit of defendant as herein outlined, standing alone, are insufficient to bring defendant within any reasonable construction of the Act in question (Chapter 110, Ill.Rev.Stat., 1973, section 17). To rule otherwise would be to stretch the doctrine of the *International Shoe* case to the breaking point, and to expand the Illinois concept of state jurisdiction over nonresidents beyond the limits imposed by due process" 249 F.2d 198, 202–203.

Although the legal services performed in *Orton*, in incorporating defendant's business and in securing the registration of defendant's common stock with the Securities and Exchange Commission, and those performed in *Bonan*, completing and delivering abstracts of land owned by defendants and in recording a certain mortgage, are distinguishable from those performed by plaintiff in this case, they are analogous in several significant ways. Both the *Orton* and *Bonan* opinions considered it significant that the defendants did not engage themselves in any business in Illinois, but merely accepted the supporting professional services performed by the plaintiffs. In *Orton*, defendant was engaged in the oil and gas business in Louisiana, Texas and Oklahoma, but not in Illinois. The fact that defendant engaged the services of an Illinois lawyer did not alter the fact that it did not transact its business in Illinois. *Orton* at p. 202. In the instant case defendant is engaged in the business of raising feeder cattle and pursuant thereto sought to purchase futures contracts through plaintiff's office in Ogden, Utah. One wanting to purchase a futures contract must engage the services of a broker in the same manner as one incorporating a business must engage the services of a lawyer. The location where plaintiff actually purchased futures contracts on defendant's behalf was of no consequence to the defendant or to the conduct of his business. As stated previously, the fact that feeder cattle futures contracts must necessarily be purchased on the Chicago Mercantile Exchange cannot result in this defendant, whose participation in the transaction took place entirely outside of Illinois, being subjected to the personal jurisdiction in the State of Illinois.

Accordingly, it is hereby ordered that defendant's motion to quash service of summons and for lack of jurisdiction over the person of the defendant is hereby granted.